**Elidia CURA-CRUZ and Jorge Garcia, Howard E. Coleman, Individually and d/b/a Coleman Conversions, Coleman Upholstery, Inc, C&D Car Connection, Inc. and Walton Gaw, Appellants**

v.

**CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, Appellee**

NO. 14-15-00632-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed February 16, 2017.

Rehearing En Banc Overruled March 18, 2017

claim based on DeLisle's memorandum.

15. We do not express any opinion on the ultimate merits of Fair Labor Act retaliation

Jonathan Bleyer, Houston, TX, for Appellants

Jason Allen Newman, Houston, TX, Jeffrey Hitt, Spring, TX, for Appellee.

Panel consists of Justices Jamison and Wise.

## SUBSTITUTE OPINION

Martha Hill Jamison, Justice

Appellant property owners brought this negligence action against CenterPoint Energy Houston Electric, LLC arising from a fire that damaged their property. The trial court granted CenterPoint's motion to exclude proposed testimony of an expert witness and no-evidence motion for summary judgment. On appeal, appellants raise two issues: (1) the trial court abused its discretion by excluding the expert testimony of Michael McGraw; and (2) the trial court committed reversible error by granting the electric company's no-evidence motion for summary judgment. We issued our original opinion on December 30, 2016. CenterPoint subsequently filed a motion for rehearing. We now withdraw our original opinion and judgment, issue this substitute opinion in its place, and overrule the motion for rehearing as moot. Concluding that McGraw is qualified to testify, we reverse and remand the trial court's judgment.

### I. Background

On October 15, 2010, a fire in Houston, Texas destroyed appellant Walton Gaw's building, appellant Howard Coleman's businesses,[1] and the residence of appel-

---

1. Coleman owned and operated Coleman Conversions, Coleman Upholstery, Inc., and C&D Car Connection, Inc.

lants Elidia Cura–Cruz and Jorge Garcia. Between the building and the residence, CenterPoint maintained a light pole with a transformer mounted on it. The Harris County Fire Marshal's Office concluded that "it is probable that this fire was the result of the ignition of dry vegetation from a fugitive spark or electrical activity that resulted from an unspecified electrical anomaly from the electrical distribution system." Although no one was injured, appellants allege the fire caused property damages and lost profits.

In 2012, appellants filed a negligence action, asserting that the fire was caused by a malfunction in the transformer that was owned, operated, maintained, and under the exclusive control of CenterPoint. Appellants further alleged that the fire and resulting damages were caused by the failure of CenterPoint to properly inspect, maintain, repair, and/or replace the transformer. Appellants alleged the fire caused in excess of $2 million in property damages and lost profits. CenterPoint initially filed a general denial and, subsequently, alleged several affirmative defenses.[2]

Appellants designated McGraw as an expert to "testify regarding, among other things, the nature, sequence, and extent of the transformer failure, the nature and design/fabrication of the transformer, and the causes of the fire that is the basis of this lawsuit." McGraw provided an expert report and was deposed by CenterPoint.

CenterPoint filed a motion to exclude McGraw's testimony under Texas Rule of Evidence 702,[3] alleging McGraw is not qualified by either education or experience to testify as to the cause and origin of the fire, the workings of the utility transformer at issue, or the standards of care applicable to a utility company.[4] CenterPoint also filed a no-evidence motion for summary judgment, maintaining that appellants have no expert to establish the relevant standard of care and can present no evidence to establish the cause of the fire.

In response to the motion to exclude, appellants asserted McGraw's qualifications satisfy Rule 702, attaching his curriculum vitae and his affidavit. In response to the no-evidence motion for summary judgment, appellants argued that, under Texas law, CenterPoint had a "duty to exercise ordinary and reasonable care commensurate with the danger." Appellants maintained CenterPoint's tariff did not materially alter the established standard or create any additional duties. Quoting McGraw's affidavit and referencing

---

2. Shortly after filing its no-evidence summary judgment motion, CenterPoint amended its answer to assert affirmative defenses, including as relevant here, that appellants' claims were barred in whole or in part by CenterPoint's tariff. A "tariff" is a schedule containing charges, rules, and regulations. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216 (Tex. 2002). Each public utility in Texas is required by the Public Utility Commission to file a tariff. *See id.* Filed tariffs govern a utility's relationship with its customers and have the force and effect of law until suspended or set aside. *Del Carmen Canas v. Centerpoint Energy Res. Corp.*, 418 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

3. Rule 702 states:

 A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Tex. R. Evid. 702.

4. CenterPoint's motion also stated that McGraw's opinions are unreliable and his testimony will not assist the trier of fact; however, it offered no substantive criticism of McGraw's opinions. We conclude that CenterPoint's Rule 702 challenge is only as to McGraw's qualifications.

other summary judgment evidence, including the Fire Marshal's report, appellants argued that they have presented more than a scintilla of evidence on all Center-Point's challenges.

The trial court granted CenterPoint's motion to exclude the proposed testimony of McGraw, finding "he is not qualified to testify to either the standard of care for a utility or violation of the standard of care for a utility." The trial court also granted CenterPoint's no-evidence motion for summary judgment, finding that appellants "have no expert testimony to establish the standard of care for CenterPoint ..., or violation of the standard of care ..., which must be established by expert testimony."[5]

## II. Standard of Care

CenterPoint is a regulated utility. The parties do not dispute that expert testimony is required in this negligence case to establish the standard of care CenterPoint owed appellants and any breach thereof. *See Schwartz v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, No. 04-05-00132-CV, 2006 WL 285989, at *4 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (mem. op.) (holding that plaintiff suing utility for negligence was obligated to present expert testimony discussing the appropriate standard of care and

whether utility's conduct met that standard).

▪▪▪ Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care is commensurate with the danger. *First Assembly of God v. Tex. Util. Elec. Co.*, 52 S.W.3d 482, 491–92 (Tex. App.—Dallas 2001, no pet.) (electric utility had a duty to exercise ordinary care when it replaced a transformer and other equipment). This "commensurate with the danger" standard does not impose a higher duty of care; rather, it more fully defines what ordinary care is under the facts presented. *See id.* Courts also examine the language of a utility company's tariff to determine if additional duties or limitations of duties are imposed. *Id.* at 492.

CenterPoint's tariff provides, in part, as follows:

> 3.2 General. [CenterPoint] will construct, own, operate, and maintain its Delivery System in accordance with Good Utility Practice for the Delivery of Electric Power and Energy to Retail Customers that are located within the Company's service territory and served by Competitive Retailers.

The tariff defines "Good Utility Practice" as having the same meaning as Public

5. CenterPoint filed its motion to exclude McGraw's proposed testimony in September 2014, following appellants' designation of McGraw as an expert witness and CenterPoint's taking McGraw's deposition. Prior to any ruling on that motion, appellants filed their response to the motion for summary judgment relying upon an October 2014 affidavit by McGraw. CenterPoint's reply stated "[f]or the reasons set forth in CenterPoint Energy's Motion to Exclude, and [request] below, McGraw is unqualified and his testimony regarding the cause of the fire is unreliable and inadmissible." CenterPoint's request included several alternate bases for striking McGraw's testimony, including (1) testimony beyond disclosed opinions and (2) sham affidavit. The trial court's June 2015 orders granted CenterPoint's Motion to Exclude McGraw and no-evidence motion for summary judgment without reference to CenterPoint's request. As such, CenterPoint did not obtain a ruling on its request to strike McGraw's testimony. Therefore, we conclude CenterPoint has waived any independent bases for striking McGraw's testimony CenterPoint may have presented in its reply to the motion for summary judgment. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Utility Commission (PUC) Rule 25.5(56), which states:

> Any of the practices, methods, and acts engaged in or approved by a significant portion of the electric utility industry during the relevant time period, **or** any of the practices, methods, and acts that, in the exercise of reasonable judgment in light of the facts known at the time the decision was made, could have been expected to accomplish the desired result at a reasonable cost consistent with good business practices, reliability, safety, and expedition. Good utility practice is not intended to be limited to the optimum practice, method, or act, to the exclusion of all others, but rather is intended to include acceptable practices, methods, and acts generally accepted in the region.

16 Tex. Admin. Code § 25.5(56)(emphasis added).

■ CenterPoint characterizes Good Utility Practice as the standard of care relevant to this dispute and materially different from ordinary negligence, but we disagree. The term "Good Utility Practice" emanates not from any Texas statute or case law. It was included in the pro-forma tariff created pursuant to PUC Rule 25.214. *See* Tex. Admin. Code 25.214(d); 26 Tex. Reg. 1310, 1310 (2001). The rule was intended to implement Texas Public Utilities Regulatory Act section 39.203 (see now Tex. Util. Code § 39.203), involving transmission and distribution service after deregulation. 26 Tex. Reg. at 1310. Except for a "narrow limitation" not at issue here,

the rule was not intended to be contrary to applicable law. *See* 26 Tex. Reg. at 1315-18. Indeed, in explanatory comments, the PUC expressed its interest in preserving the status quo as closely as possible as it relates to exposure to potential liability for companies such as CenterPoint in relation to customers such as appellants, specifically referencing *Houston Lighting & Power v. Auchan*, 995 S.W.2d 668 (Tex. 1999) (limiting certain economic damages resulting from utility's ordinary negligence). 26 Tex. Reg. at 1317. The PUC expressed no intent to alter the standard of care established by the courts, nor was it asked to do so by the legislature.

■ In chapter five of CenterPoint's tariff, a more specific provision governing this dispute, Good Utility Practice is not mentioned as a limitation on liability.[6] Rather, Section 5.2.1 [7] states, "This Tariff is not intended to limit the liability of [CenterPoint] or [appellants] for damages except as expressly provided in this Tariff." [8] The section states familiar limitations, but does not expressly modify the standard of care relevant to retail customers such as appellants. Generally, a more specific statutory provision will control over a more general one. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000); *R.E. Janes Gravel Co. v. Tex. Comm'n on Envtl. Quality*, No. 14-15-00031-CV, 522 S.W.3d 506, 511–12, 2016 WL 7323307, at *4 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no. pet. h.).

**6.** Good Utility Practice is mentioned only briefly in chapter five and then as to the retail customer's installation and maintenance of equipment beyond the point of delivery, which is not at issue in this case (section 5.4.1).

**7.** The PUC commented that the purpose of 5.2.1 was to reflect limitations of liability for companies such as CenterPoint. Section 3.2 was not mentioned. 26 Tex. Reg. at 1315.

**8.** The standard of care is typically considered a component of a liability claim. *See generally Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (discussing healthcare liability claims).

For these reasons, we conclude that, as it relates to retail customers such as appellants—plaintiffs in a negligence suit—CenterPoint's tariff did not create a new or additional standard of care contrary to that already established by Texas common law. Good Utilities Practice does not impose a different duty of care; rather, it more fully defines what ordinary care is under the facts presented. Moreover, even if the tariff created a new standard of care, we conclude that McGraw is qualified to testify regarding that standard.

### III. Motion to Exclude

In issue one, appellants assert that the trial court abused its discretion in excluding McGraw's expert testimony. A trial court has broad discretion in deciding whether to admit or exclude expert testimony. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719–20 (Tex. 1998); *Weingarten Realty Inv'rs v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We will reverse the trial court's ruling only if the court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006).

The role of the trial court in qualifying experts is to ensure "that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). The party offering the expert's testimony bears the burden to show the witness possesses "special knowledge as to the very matter on which he proposes to give an opinion." *Id.* General experience in a specialized field does not qualify a witness as an expert. *Houghton v. Port Ter-*

*minal R.R. Ass'n*, 999 S.W.2d 39, 47–48 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders*, 924 S.W.2d at 153–54.[9]

There are no definitive guidelines to determine whether a witness's education, experience, skill, or training qualifies the witness as an expert. *Perez v. Goodyear Tire & Rubber Co.*, No. 04-14-00620-CV, 2016 WL 1464768, at *3 (Tex. App.—San Antonio Apr. 13, 2016, no pet.) (memo. op.). The witness may express an opinion on a subject if the witness has specialized knowledge that will assist the trier of fact in understanding the evidence or in determining a fact in issue. *Id.* The specialized knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Id.*

Our review of McGraw's testimony reveals he has been involved with circuit design and equipment manufacturing of electrical equipment of a similar type to the transformer in question, applying the same engineering principles, since 1978. His exclusive focus since 1996 has been dry–type and liquid–filled transformers for industrial distribution systems.

McGraw holds a Bachelor of Business Administration in accounting and finance and also has completed extensive coursework in electrical engineering toward a Bachelor of Science degree. He worked for General Electric for ten years focusing on medium voltage switch gear and electrical distribution equipment with training at a

---

**9.** Neither party disputes that expert testimony is required on the subject matter at issue.

number of its manufacturing facilities. McGraw also worked for Powercon Corporation for twelve years, maintaining responsibility for specification, design, and sale of company products (electrical power distribution equipment and system servicing utilities) while also holding electrical engineering responsibilities for their component operation, directing their component testing, development, and equipment failure analysis, including catastrophic failure reviews. Additionally, for over nine years, McGraw owned and operated his own company specializing in medium voltage transformer and distribution equipment sales, installation, field testing, and repair/diagnostic services.

McGraw inspected and examined the site and transformer in question and witnessed the removal of the transformer. He reviewed the Fire Marshal's report, deposition testimony, CenterPoint's tariff, and relevant PUC Rules, and relied on various industry codes and standards, including the National Electrical Code, Institute of Electrical and Electronics Engineering Standards, National Electrical Manufacturers Standards, and National Fire Protection Association 921.

 CenterPoint complained in its motion that McGraw does not have an engineering degree and is not licensed as an engineer or a certified origin and cause investigator.[10] Although McGraw did not complete his electrical engineering coursework, he has extensive studies in the area. Neither a particular college degree nor a particular license is required under Rule 702 for a witness to qualify as an expert. *See Glasscock v. Income Prop. Servs.*, 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd).

CenterPoint also asserts that McGraw admitted that he is not qualified to testify regarding the standard of care applicable to an electric utility. The alleged admission was made in his deposition:

Q: ... I want to just backtrack a little bit on your qualifications. I just want to make sure: You're not an expert with regard to utility practices or what a utility should or shouldn't do. Right?

A: No.

At the outset, we note that McGraw's deposition was taken before CenterPoint amended its answer, asserting the terms of its tariff as an affirmative defense. On its face and in isolation, McGraw's statement that he is not an expert regarding "what a utility should or shouldn't do" would seem to be dispositive as to the first prong of Good Utility Practice. However, read in context along with his affidavit and other summary judgment evidence, it is clear that there is "more to the story."

In his affidavit, McGraw addressed the standards of care owed by CenterPoint Energy to appellants and any breach thereof:

As discussed in my reports and above, there was a failure of at least three (3) safety components on the transformer and other distribution equipment in question that caused or contributed to the cause [of] the fire: the HV bushing, the ground wire, and the external fuse. **Ordinary and reasonable care, commensurate with the danger,** dictates that each of these three safety components be installed in a proper and dielectrically consistent manner for the applied voltages, and maintained in good working condition to prevent an event like the one in question from occurring.

---

10. CenterPoint also complained that McGraw has never before served as a testifying witness. Rule 702 does not require such experience.

Likewise, **in the exercise of reasonable judgment in light of the facts known at the time the decision was made** dictates that each of these three safety components be installed in a proper and dielectrically consistent manner for the applied voltages, and maintained in good working condition to prevent an event like the one in question from occurring. It is necessary to regularly inspect, maintain, and repair and/or replace these three safety components to accomplish the desired result of keeping them in good working order to prevent an event like the one in question from occurring. None of these components is likely to fail if they are properly installed, inspected, maintained, repaired and/or replaced. In fact, in reasonable scientific and engineering certainty, if these three safety components are maintained in good working condition through proper installation, inspection, maintenance, repair and/or, replacement, it is more likely than not that they will not fail, and instead will work properly and thereby prevent an event like the one in question from occurring. This can be accomplished **at a reasonable cost consistent with good business practices, reliability, safety, and expedition.** (Emphasis added).

CenterPoint urges that McGraw has not demonstrated specialized knowledge as to the standard of care of Good Utility Practice. At oral argument, CenterPoint maintained that "all those cases [cited in its brief] say that you have to have first a person in the industry that can set out objectively what the actor should have done."[11] Appellants in rebuttal stated "there is nothing in the case law that says you have to have industry–specific experience." The cited cases do not support CenterPoint's proposition.

CenterPoint further argues that McGraw's affidavit constitutes no evidence as it is impermissibly speculative, based again on the deposition testimony discussed above. CenterPoint did not make this complaint to the trial court, and thus it is waived. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.,* 391 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding an objection claiming an affidavit is speculative alleges a defect of form and must be raised in the trial court).

McGraw's affidavit demonstrates his familiarity with the utility's duty to exercise ordinary and reasonable care commensurate with the danger. Although McGraw's affidavit does not specifically recite as such the practices, methods, and acts engaged in or approved by a significant portion of the electric utility industry, it states he relied on particular industry codes and standards. Furthermore, in the affidavit, McGraw concluded that CenterPoint should have regularly inspected, maintained, and repaired and/or replaced the HV bushing, the ground wire, and the external fuse to prevent an incident like the one at issue. His affidavit and his experience in the field over many years support appellant's argument that McGraw's qualifications and experience permit him to testify as to ordinary and reasonable care commensurate with the danger and both prongs of Good Utility Practice. McGraw's affidavit demonstrates

11. CenterPoint specifically referenced *FFE Transp. Servs., infra; Schwartz, supra; Oncor Elec. Delivery Co., LLC v. S. Foods Grp., LLC,* 444 S.W.3d 699 (Tex. App.—Dallas, 2014, no pet.), and *Simmons v. Briggs. Equip. Trust,* 221 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

his familiarity with the utility's duty to maintain equipment in a manner that, in the exercise of reasonable judgment in light of the facts known at the time the decision was made, could have been expected to accomplish the desired result at a reasonable cost consistent with good business practices, reliability, safety, and expedition.

We conclude that McGraw demonstrated specialized knowledge, derived from specialized education, practical experience, a study of technical works, or a varying combination of these things, that will assist the trier of fact in understanding the evidence or in determining a fact in issue and, as such, satisfies Rule 702.[12] The trial court abused its discretion in excluding McGraw's testimony based on his qualifications.

Appellants' first issue is sustained.

## IV. No-Evidence Summary Judgment

■ In issue two, appellants assert that the trial court committed reversible error by granting CenterPoint Energy's no-evidence motion for summary judgment. We review de novo the trial court's grant of summary judgment. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 661 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In reviewing either a no-evidence or a traditional summary judgment motion, all evidence favorable to the nonmovant is taken as true, and we draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Lone*

*Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 858 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

■ In a no-evidence motion for summary judgment, the movant asserts there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2007, no pet.). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes Inc. v. Granada Biosciences, Inc.* 124 S.W.3d 167, 172 (Tex. 2003); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

■ To establish negligence, a plaintiff must show (1) the defendant owed a legal duty to the plaintiff, (2) it breached that duty, and (3) damages proximately resulted from the breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Expert testimony is necessary to establish the applicable standard of care "when the alleged negligence is of such a nature as not to be within the experience of the layman." *FFE Transp. Serv., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004). In the case at bar, it is undisputed that expert testimony is required to

---

12. CenterPoint also asserted that McGraw is not qualified to testify regarding the origin or cause of the fire, basing its arguments on additional deposition excerpts. We conclude that, read in context with his affidavit as excerpted above and other summary judgment evidence, McGraw demonstrated spe-

cialized knowledge as to causation that satisfies Rule 702. CenterPoint also criticized various conclusions reached by McGraw. However, these criticisms go to McGraw's methodology or results and do not address his qualifications to render the opinions.

establish both the standard of care for a utility and the violation of that standard. *See Schwartz*, 2006 WL 285989, at *4. Similar to its arguments in the motion to exclude, CenterPoint maintained that appellants could present no evidence of a breach of its standard of care because they have no competent expert testimony. Appellants replied to the motion, attaching as evidence deposition testimony and the affidavit from McGraw. CenterPoint in reply objected to McGraw's qualifications.

We previously have concluded that McGraw is qualified to testify as to CenterPoint's standard of care and any breach thereof. In his affidavit, McGraw concluded that CenterPoint failed to use ordinary and reasonable care commensurate with the danger, did not adequately maintain certain safety components of its equipment, and did not exercise reasonable judgment in light of the facts known at the time the decision was made, and thereby, CenterPoint breached the standard of care required in this matter.

We conclude appellants presented more than a scintilla of probative evidence as to CenterPoint's breach of the relevant standard of care. Accordingly, we conclude that the trial court erred in granting summary judgment in CenterPoint's favor as to appellants' negligence claim.

Appellants' second issue is sustained.

## V. Conclusion

We reverse the trial court's orders excluding the expert testimony of McGraw and granting summary judgment. We remand this action to the trial court for proceedings consistent with our opinion.