**Affirmed in Part; Reversed and Remanded in Part; and Memorandum Opinion filed February 5, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00257-CV

---

## RICHARD D. DAVIS, L.L.P., A TEXAS GENERAL PARTNERSHIP, RICHARD D. DAVIS, L.L.P, A NEVADA LIMITED LIABILITY PARTNERSHIP, AND PATRICIA K. SUAREZ, Appellants

## V.

## ANDY KNOTT, BILL GREEN, DEMPSEY GEAREN, JIM PHILLIPS, PHIL BIRKELBACH, DANNY LANGHORNE, HANS VAN DER VOORT, GENE MORTON, STANLEY HOFFPAUIR AND PAUL KATES, Appellees

---

**On Appeal from the 506th Judicial District Court
Waller County, Texas
Trial Court Cause No. 08-12-19600-A**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from the granting of a no-evidence summary judgment entered January 4, 2017 and is one of three before this court involving the same

parties.[1] For the reasons stated below, we affirm in part and reverse and remand in part.

## BACKGROUND

In 1993, Richard D. Davis, L.L.P., a Texas General Partnership, ("Davis Texas") purchased a 55-acre tract from Sky Lakes, Inc., that was secured by a deed of trust. In 2006, the promissory note was assigned to the Sky Lakes Flyers Foundation ("SLFF").[2] Shortly thereafter, SLFF sent notices of default based on various allegations, including failure to provide proof of insurance and payment of taxes, and the condition of the property. In August 2007, Davis Texas filed suit (the "2007 suit") against SLFF and Carbett J. Duhon, III.

In September 2007, SLFF refused Davis Texas' check for the August 2007 payment on the grounds the note had been accelerated. Davis Texas obtained injunctive relief to prevent foreclosure and in September 2007 refinanced at an interest rate of fourteen and a half percent (14.5%) rather than the original rate of five percent (5%) and transferred its interest in the property to Richard D. Davis, L.L.P., a Nevada Limited Liability Partnership, ("Davis Nevada"). SLFF also filed a counterclaim in the 2007 suit and named Richard D. Davis and Patricia K. Suarez as third-party defendants. SLFF asserted breach of contract and sought a non-judicial foreclosure on the property.

---

[1] Before this court is also Appeal No. 14-17-00278-CV, arising from a judgment entered January 10, 2017 upon a jury verdict in Trial Court Cause No. 08-12-19600, and Appeal No. 14-17-00372-CV, an appeal from another summary judgment entered in Trial Court Cause No. 07-08-18999 on April 7, 2017.

[2] This assignment was part of a settlement from a lawsuit brought against Waller Country Club Estates and George Robinson complaining they had violated a right of first refusal to purchase the property.

Subsequently, suit was brought in 2008 (the "2008 suit") by Andy Knott, Bill Green, Dempsey Gearen, Jim Phillips, Phil Birkelbach, Paul Kates, Danny Langhorne, Hans van der Voort, Gene Morton and Stanley Hoffpauir (collectively "the Green Parties"), against Davis Nevada, Davis Texas and Patricia K. Suarez (collectively "the Davis Parties"), and Jump Out Express, L.L.C.[3] for breach of contract, tortious interference with use and enjoyment of property, nuisance, a request for equitable relief in the form of a temporary and permanent injunction, and attorney's fees.[4] In June 2009, the trial court granted the Green Parties' motion for temporary injunction.

The Davis Parties counterclaimed in the 2008 suit, seeking damages from the Green Parties, in their individual capacities, for their alleged orchestration of the "wrongful" acceleration of the note and the ensuing "illegal" efforts to foreclose. Specifically, the Davis Parties counterclaimed for:

1. Temporary and permanent injunction;
2. Breach of contract and violation of restrictive covenants;
3. Fraud;
4. Tortious interference with contracts and business relations and business disparagement;
5. Trespass;
6. Declaratory judgment;
7. Violation of automatic stay;

---

[3] The plaintiffs' claims against Jump Out Express were eventually settled and on February 18, 2010, the trial court signed an agreed order severing those claims into Trial Court Cause No. 08-12-019600-B.

[4] Plaintiffs' third amended petition named Bennie Ortman as an additional defendant. Subsequently, Ortman filed a notice of removal to the United States District Court for the Southern District of Texas. That court granted plaintiffs' emergency motion and remanded the case to the 155th Judicial District Court of Waller County for lack of subject matter jurisdiction. Plaintiffs' later filed a notice of non-suit as to Ortman.

8. Economic coercion and duress;

9. Conspiracy; and

10. Wrongful acceleration.[5]

By order signed February 4, 2010 these counterclaims were severed into the suit underlying this appeal (the "2010 suit"). The Green Parties moved for no-evidence summary judgment on December 2, 2016, as to the following claims:

1. Breach of contract;

2. Fraud;

3. Tortious interference with contracts and business relations; and business disparagement;

4. Violation of automatic stay;

5. Conspiracy; and

6. Wrongful acceleration;

In their motion, the Green Parties asserted the Davis Parties' claims for temporary and permanent injunction, breach of restrictive covenants, declaratory judgment, and trespass[6] were tried to a verdict in the 2008 suit. Further, the Green Parties argued the Davis Parties' claim for economic coercion and duress was not a cause of action but an affirmative defense.

The trial court granted summary judgment in favor of the Green Parties on all counterclaims. Further, the trial court found the Davis Parties' first amended counterclaim, which pled a new cause of action for violation of the Texas Debt Collection Act ("TDCA"), was untimely filed on December 27, 2016, and did not

---

[5] Defendants also filed a third-party action against Sky Lakes Addition Section II, An Association of Lot Owners, Sky Lakes Flyers Foundation, Sky Lakes Addition Section II Successor Building Committee, Carbett J. Duhon, III, and Charles E. Radcliffe. The trial court subsequently struck the third-party action.

[6] The cause of action for trespass was expressly not severed into Trial Court Cause No. 08-12-19600-A but remained in the original cause number.

consider it. In its order granting the Green Parties' summary judgment, the trial court expressly found the amended counterclaim "was untimely filed and the Court takes no consideration of the elements alleged therein." The trial court then ordered that "[the Davis Parties] have no further remaining claims and this is a final judgment."

The Davis Parties agree that the cause of action for temporary and permanent injunction was tried to a final judgment in the 2008 suit. The Davis Parties do not dispute that the claims for violation of restrictive covenants and declaratory judgment were tried in the 2008 suit, our record in the appeal from the 2008 suit reflects the accuracy of the Green Parties' assertion to that effect, and the Davis Parties make no argument on appeal regarding those causes of action. Accordingly, this appeal does not concern the claims for injunctive relief, violation of restrictive covenants, or declaratory judgment.

The Davis Parties timely filed a motion for new trial on February 3, 2017. The motion was overruled by operation of law on March 20, 2017. A timely notice of appeal was filed by the Davis Parties on April 3, 2017.

On appeal, the Davis Parties claim the trial court erred: (1) in granting the Green Parties' no-evidence motion for summary judgment; (2) by refusing to consider the Davis Parties' amended counterclaim; and (3) by denying the Davis Parties' motion for new trial. We initially consider their second issue.

**THE FIRST AMENDED COUNTERCLAIM**

The Green Parties filed their no-evidence motion for summary judgment on December 2, 2016. That same day, they also filed a Notice of Submission for the motion to be submitted without oral hearing on or after January 2, 2017. On December 26, 2016 the Davis Parties filed an objection to and motion to strike the notice of submission. The Davis Parties' attached the Waller County 2016 Holiday

5

Schedule which reflects that Monday, December 26, 2016 was a holiday and the County Clerk Holiday Schedule for 2017 showing New Years' Day was being observed on Monday, January 2, 2017. On December 27, 2016 the Davis Parties filed a motion to continue submission of the no-evidence motion for summary judgment for thirty days. Later that same day, the Davis Parties filed their first amended counterclaim. In its order, the trial court overruled the Davis Parties' motion for continuance and objection to notice of submission.

In their second issue, the Davis Parties contend the trial court erred by refusing to consider their amended counterclaim. Parties may amend their pleadings provided that any pleading offered for filing within seven days of the date of trial "shall be filed only after leave of the judge is obtained." Tex. R. Civ. P. 63. Thus, amendment without leave of court is authorized if it is filed "seven days or more before the date of trial." *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (citing Tex. R. Civ. P. 63 cmt.). "[T]he last day counted from the date of the filing may be the date of the hearing." *Id.* To calculate the "seven days," we do not count the day on which the pleading is filed but do count the seventh day after which it was filed. *Id.*

Because January 2, 2017, was a holiday, the submission date fell to the next day, January 3, 2017. *See* Tex. R. Civ. P. 4; *Miller Brewing Co. v. Villarreal*, 829 S.W.2d 770, 771 (Tex. 1992). And not counting December 27, 2016, the seventh day after the amended counterclaim was filed was January 3, 2017. *See* Tex. R. Civ. P. 4; *Sosa*, 909 S.W.2d at 895. Accordingly, the amended counterclaim was timely filed and the trial court erred in refusing to consider it. Issue two is sustained.

In their first issue, the Davis Parties contend the Green Parties were not entitled to summary judgment on the Davis Parties' cause of action for violation of the TDCA because it was not included in the no-evidence motion for summary judgment. Generally, it is reversible error for a trial court to grant summary judgment

on a claim not addressed in the summary-judgment motion. *Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co., Inc.*, 489 S.W.3d 118, 123 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 673 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Although there are limited exceptions to the general rule,[7] the Green Parties acknowledge in their brief that this claim was a new cause of action. Accordingly, the Davis Parties' first issue is sustained as to that claim.

## THE MOTION FOR NEW TRIAL

We next consider the second issue raised by the Davis Parties, whether the trial court erred by failing to grant their motion for new trial. We review the denial of a motion for new trial for an abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam); *Houston Laureate Associates, Ltd. v. Russell*, 504 S.W.3d 550, 559 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The Davis Parties argue the final judgment in the original cause number constituted "new evidence" which could not be presented at the time the trial court considered the no-evidence motion for summary judgment, as it was not in existence when the Davis Parties had to file their response. The Davis Parties contend the final judgment was conclusive as to one of the grounds of default on the promissory note alleged by the Green Parties—the condition of the airport property.

To obtain a new trial based on newly discovered evidence, a party must show the trial court that (1) the evidence has come to light since trial; (2) it is not due to lack of diligence that it was not produced sooner; (3) the new evidence is not cumulative; and (4) the new evidence is so material that it would probably produce

---

[7] *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011) (per curiam) (citing Tex. R. App. P. 44.1(a)).

a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review the trial court's denial of a motion for new trial for abuse of discretion. *Id.*

The Davis Parties do not identify that portion of the judgment that is purportedly conclusive as to the condition of the airport property. The Green Parties contend the judgment makes no findings of fact regarding the condition of the airport property and the jury was not asked, and did not make, any finding regarding the condition of the airport property. In their reply brief, the Davis Parties make no challenge to these contentions. Our review of the final judgment attached to the motion for new trial supports the Green Parties' contentions and does not reveal the judgment makes any conclusions about the condition of the airport property. Assuming the judgment could constitute "newly discovered evidence," the Davis Parties have not shown it does so. Because the underlying premise of the Davis Parties' issue that the trial court erred in denying its motion for new trial is not supported by the record, we cannot conclude the trial court abused its discretion. Issue two is overruled.

## THE NO-EVIDENCE SUMMARY JUDGMENT

We now turn to the Davis Parties' first issue asserting the trial court erred in granting the no-evidence summary judgment. Initially, we reject the Green Parties' argument that the trial court properly granted summary judgment because the Davis Parties failed to timely file a response. *See* Tex. R. Civ. P. 166a(c). Regardless of the timeliness of the Davis Parties' response, the trial court's summary-judgment order recites the trial court considered the Davis Parties' response. Accordingly, we also consider the response in our review on appeal. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (noting

permission to file a late response may be reflected in a recital in the summary judgment).

*Standard of Review*

We review de novo a trial court's grant of summary judgment. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing either a no-evidence or a traditional motion for summary judgment, all evidence favorable to the nonmovant is taken as true, and we draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Cura-Cruz v. CenterPoint Energy Houston Elec., LLC*, 522 S.W.3d 565, 575 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). In a no-evidence motion, the movant asserts there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Cura-Cruz*, 522 S.W.3d at 575. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element. *Id.*

The Davis Parties contend they produced evidence supporting the challenged elements as to all their causes of action: (1) breach of contract; (2) fraud; (3) tortious interference with a contract and prospective business relations and business

9

disparagement; (5) violation of the automatic stay; (6) conspiracy; (7) wrongful acceleration; and (8) economic coercion and duress.

*Breach of Contract and Wrongful Acceleration*

The Davis Parties' counterclaims asserted wrongful acceleration and inducement of breach of contract. Specifically, the Davis Parties alleged the Green Parties induced SLFF to breach the deed of trust and promissory note, causing SLFF to accelerate the note without legal cause or justification.

We first note that in the section of their brief addressing wrongful acceleration, the Davis Parties only refer this court to the evidence discussed in their argument regarding breach of contract. Accordingly, the Davis Parties have not differentiated their claim for wrongful acceleration from their cause of action for breach of contract. Accordingly, we do not address it as such. *See* Tex. R. App. P. 38.1(i).[8]

As to breach of contract, in their no-evidence motion the Green Parties asserted the Davis Parties had no evidence of any of the elements, which are: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In their brief on appeal, the Davis Parties contend they produced evidence of breach of contract in Suarez's second corrected declaration. The Davis Parties rely upon Suarez's following statement:

---

[8] We note that wrongful acceleration of a real estate note, as alleged here, violates the Texas Debt Collection Practices Act as a matter of law. *Rey v. Acosta*, 860 S.W.2d 654, 659 (Tex. App.— El Paso 1993, no writ) (citing *Dixon v. Brooks*, 604 S.W.2d 330, 334 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.)). We have already determined the trial court erred in granting summary judgment on that claim.

14. From January through August, 2007, the Texas General Partnership made all monthly payments due under the original Promissory Note to Sky Lakes and the individual Defendants that operated it. Sky Lakes accepted all of the Texas General Partnership's monthly payments and cashed the Texas General Partnership's checks.

The Davis Parties further refer to Exhibit 6 to Suarez's declaration, a demand letter for immediate payment of the unpaid balance on the promissory note, with interest and attorney's fees. Regardless of whether the actions of SLFF can be imputed to the Green Parties, this is evidence that SLFF accelerated the note but is not evidence they did so without legal justification. Because the Davis Parties have not demonstrated on appeal that they presented to the trial court more than a scintilla of evidence of the third element of breach of contract, they did not meet their burden to raise a genuine issue of material fact as to each element. *See Cura-Cruz*, 522 S.W.3d at 575. Accordingly, the trial court did not err in granting summary judgment on that claim.

*Fraud*

The Davis Parties counterclaimed for fraud alleging the claims for attorney's fees, maintenance fees, trustee's fees, and costs asserted by SLFF were made at the direction and control of the Green Parties and were fraudulent. To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). In their motion, the Green Parties asserted the Davis Parties had no evidence of any of these elements. On appeal, the Davis Parties contend they presented to the trial court more than a scintilla of evidence as to each element of their claim.

In their response, the Davis Parties referred the trial court to paragraphs 23, 24, 26 and 27 of Suarez's declaration. In their brief, the Davis Parties also refer this court to paragraph 25 of Suarez's declaration, Exhibit 6 to that declaration, and paragraphs 5 and 6 of the declaration of Joe Alfred Izen, Jr., counsel for the Davis Parties, which was attached to the response to the no-evidence motion for summary judgment. Because all the evidence referred to in their brief was attached to the response, we consider it.

The relevant portions of Suarez's declaration provide:

23. Sky Lakes Foundation and the individual Defendants in this case claimed they had expended $41,000.00 in attorney's fees in their illegal efforts to accelerate the Texas General Partnership's original promissory note and to wrongfully foreclose on the 55 acre airport property. Sky Lakes Foundation and the individual Defendants added this $41,000.00 onto the alleged indebtedness which the Texas General Partnership would have to pay off in order to avoid a foreclosure sale. Additionally, Sky Lakes Addition Section II added over $23,417.79 in alleged back maintenance fees which the Texas General Partnership had never paid since 1993 and did not owe to the amount due. Sky Lakes Foundation and the individual Defendants also added a trustee's fee in excess of $1,000.00 to the amount allegedly owed which would have to be paid off in order to prevent a foreclosure sale of the property even though no trustee's sale was ever carried out. All told, Sky Lakes Foundation and the individual Defendants in this case demanded almost $300,000.00 to pay off the original $285,000.00 indebtedness due under the original purchase money note.

24. Texas General Partnership finally found a high risk private lender willing to loan $300,000.00 on the 55 acre airport property. In order to refinance the property and pay and satisfy Sky Lakes Foundation and the individual Defendants in this case extortionate demands. The Texas General Partnership was required, by the lender, to transfer its title to a new limited liability partnership entity. The new entity, Richard D. Davis Limited Liability Partnership, a Nevada Limited Liability Partnership, after receiving transfer of title from the Texas General Partnership, as required by the high risk lender, signed

12

a new note in the amount of $275,000.00 which called for monthly payments of $4,460.00 per month over three years at 14.25% per annum interest. Plaintiff Suarez was required to personally guarantee the payments under this new note with the high risk lender.

25. As a result of the refinancing of the property in question forced by the illegal actions of Sky Lakes Foundation and the individual Defendants in this case which directed and controlled Sky Lakes Foundation, the Texas General Partnership lost the favorable terms of financing which called for payment of $285,000.00 with monthly payments of $1,530.00 over 30 years at 5% interest. From the date the property was refinanced with JLE, the high risk lender, through the date JLE, Inc. was paid off and another lender assumed the purchase money indebtedness, Plaintiff, Richard D. Davis Limited Liability Partnership, a Nevada Limited Liability Partnership, paid over $480,000.00 in additional interest it would not have had to pay but for the illegal wrongful acceleration and threats of wrongful foreclosure carried out or made by the Sky Lakes Foundation and the individual Defendants operating it. A true and correct copy of the "refinanced promissory note" which provided the funds to pay off the individual Defendants and Sky Lakes Foundation's extortion and illegal demands is attached hereto, marked Plaintiffs' Exhibit 6, and is incorporated by reference.

26. I recently attended the trial in Cause No. 08-12-19600 in which I was personally sued by the individual Defendants in this case in which I along with Richard D. Davis Limited Liability Partnership, a Texas General Partnership, and Richard D. Davis Limited Liability Partnership, a Nevada Limited Liability Partnership, were sued by the individual Defendants in this case. During the trial testimony, I heard Defendants' attorney, Kyle Sears, the Defendants' previous attorney testify that Defendants in this case had incurred a $250,000.00 legal bill with his office. Attorney Sears also testified that the individual Defendants in this case had "paid the bill for their legal services in full."

27. During written discovery in Cause No. 08-12-19600, the Sky Lakes Foundation provided bank ledger sheets indicating that attorney Sears had been paid at least $5,304.20 by Sky Lakes Foundation. Sky Lakes Foundation's bill for attorney Sears' unsuccessful and illegal efforts to foreclose on the 55 acre airport property was only $41,000.00 according to Sears' billings. Attorney Sears testified that the individual Defendants in this case had "paid their attorney's fees in full." The bank ledger records produced by the Defendant Sky Lakes in discovery in

13

Cause No. 07-08-18999 coupled with attorney Sears testimony prove that the individual Defendants in this case used the monies from Sky Lakes Foundation to pay their own personal attorney's fees which they incurred in Cause No. 08-12-19600 and in this case. Attorney Sears' testimony and Sky Lakes Foundation's bank ledger records establish that all of the individual Defendants in this case accepted the benefits of the wrongful acceleration and used the funds from the wrongful acceleration which derived from the refinancing of the Texas General Partnership's property with JLB, Inc. to pay their own personal legal fees. A true and correct copy of the Sky Lakes Foundation's bank ledger sheets is attached to this Declaration as Plaintiffs' Exhibit 7.

Izen's declaration states:

5. I received my licence [sic] to practice law from the Supreme Court of Texas on June 10, 1977, and have practiced law continually since that date in Harris County, Texas. I am familiar with the reasonable and customary charges of attorneys for same and similar legal services as those attorney Kyle Sears claimed he performed.

6. While attempting to foreclose on the 55 acre airport property owned by Richard D. Davis Limited Liability Partnership, a Nevada Limited Liability Partnership, Sears' charge of $41,000.00 or more for those services was grossly excessive. A reasonable charge for the legal services, if they were necessary, which they were not, would be $7,000.00.

In their brief, the Davis Parties assert the above portions of Izen's declaration are some evidence the Green Parties made a representation that was false and knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth. The Davis Parties contend Izen's declaration is evidence that the Green Parties falsely represented that SLFF's attorney, Kyle Sears, who also represented the individual defendants, performed $41,000 in legal services. Assuming, without deciding, the actions of SLFF could be imputed to the Green Parties individually, Izen's declaration is, at most, some evidence the fees charged by Sears were not reasonable and necessary, but it is not evidence that Sears did not charge SLFF $41,000 for his services. In fact, Suarez's declaration states that SLF

14

was billed $41,000 by Sears and that Sears testified the Green Parties had "paid their attorney's fees in full."

The Davis Parties also allude to "claims for trustee's fees for a trustee's sale that was never carried out and other false and illegal charges SLFF imposed on the Appellants." The Davis Parties' then complain more specifically of representations made by Trey Duhon and Sears regarding defaults.

As to the latter, no such complaint was made in response to the no-evidence motion. The law is well-settled that we may not affirm or reverse a summary judgment on a ground not presented to the trial court. *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993); *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex. 1992); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979).

Regarding the former, there are no references to the record, citations to authority, or argument accompanying this statement. It is not our duty to review the record, research the law, and then fashion a legal argument when a party has failed to do so. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Briefing waiver occurs when a party fails to make proper citations to authority or to the record, or to provide any substantive legal analysis. *See* Tex. R. App. P. 38.1(i); *Canton–Carter*, 271 S.W.3d at 931; *Sterling v. Alexander*, 99 S.W.3d 793, 798–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Even though the courts are to interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *San Saba Energy, L.P. v. Crawford*, 171

S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Accordingly, we do not address this contention.

For these reasons, we conclude the Davis Parties have failed to demonstrate on appeal that they presented to the trial court more than a scintilla of evidence of the first element of fraud. *See Cura-Cruz*, 522 S.W.3d at 575. Because the Davis Parties did not meet their burden to raise a genuine issue of material fact as to each element, the trial court did not err in granting summary judgment as to their fraud claim.

*Tortious Interference with a Contract;*
*Interference with Prospective Business Relations; and*
*Business Disparagement*

In their response to the no-evidence motion for summary judgment, the Davis Parties referred to paragraph 28 of Suarez's declaration as evidence of their claims for tortious interference with a contract and prospective business relations and business disparagement. Accordingly, we jointly consider these claims.

In her declaration, Suarez stated the following:

28. Starting in 2008, the Nevada Limited Liability Partnership had a tenant on the 55 acre airport property, Jump Out Express, LLC, and was conducting parachute and sky diving operations. Jump Out Express, was paying monthly payments to the Texas General Partnership under a lease of the 55 acre airport property of $4,250.00 per month. The individual Defendants in this case sued Jump Out Express, LLC claiming that parachute / sky diving operations violated the deed restrictions of Sky Lakes Addition Section I and that such deed restrictions were binding on the owner of the 55 acre airport property (Nevada Limited Liability Partnership). The individual Defendants in this case obtained a temporary injunction which partially restricted the parachute / sky diving operations carried out by Nevada Limited Liability Partnership's tenant on the 55 acre airport property. The temporary injunction and restrictions have never been lifted although

16

the entry of Final Judgment on the jury verdict is imminent in Cause No. 08-12-19600. The verdict of the jury returned in Cause No. 08-12-19600 on August 5, 2016 established that the individual Defendants' temporary injunction unlawfully limited the Nevada Limited Liability Partnership's and its tenant's rights to conduct parachute and sky diving operations on the 55 acre airport property that Nevada Limited Liability Partnership owned. Due to the individual Defendants' threats against Nevada Limited Liability Partnership's tenant, Jump Out Express, Jump Out Express, [sic] did not renew on its lease for 2011 and moved its operations to an airport in Eagle Lake, Texas. As the result of the loss of Jump Out Express, as a tenant and the conduct of the individual Defendants in this case including threats that sky diving violated the deed restrictions, the Nevada Limited Liability Partnership was unable to release the property for sky diving operations after Jump Out Express departed. The Nevada Limited Liability Partnership lost $4,250.00 a month from 2011 through the date of this Declaration Prior to Jump Out Express's departure, the Nevada Limited Liability Partnership had collected $81,540.00 in lease payment from Jump Out Express. The Nevada Limited Liability Partnership would have collected at least $306,000.00 in rent if Jump Out Express had renewed its lease on the 55 acre airport property. The individual Defendants' threats and their conduct which included disparagement of Jump Out Express' business character, a charge that Jump Out Express had bribed the local Better Business Bureau by Defendant, Paul Kates, and other actions deterred Jump Out from renewing its lease.

The only basis of the Davis Parties' claims for tortious interference with a contract[9] and tortious interference with prospective business relations[10] described in

---

[9] The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss occurred. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998); *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 652 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

[10] To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417

17

the above portions of Suarez's declaration is the suit brought by the Green Parties against Jump Out Express asserting deed restrictions prohibiting sky-diving activities on the property. The Green Parties argue their suit against Jump Out Express was not actionable interference because they had a right to file such a suit.

In her declaration, Suarez states the Green Parties' temporary injunction "unlawfully limited" sky-diving operations. However, she sets forth no underlying facts that the temporary injunction was "unlawful." A conclusory statement is one that expresses a factual inference without providing underlying facts in support of the conclusion. *See, e.g., Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 & n.21 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding affidavit's statement that "this was false and defamatory and has injured me in my profession" was conclusory). Such conclusions are not proper summary judgment evidence. *See Padilla v. Metro. Transit Auth. of Harris Cty.*, 497 S.W.3d 78, 86 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Accordingly, we conclude the Davis Parties failed to produce competent summary judgment evidence in support of their claims of tortious interference.

To recover for business disparagement, a plaintiff must first establish the defendant published false and disparaging information *about it*. *Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 170 (Tex. 2003) (emphasis added); *see also In re Lipsky,* 460 S.W.3d 579, 592 (Tex. 2015).[11] The Davis Parties rely upon Suarez's statement that Jump Out Express' business character was disparaged by a

---

S.W.3d 909, 923 (Tex. 2013).

[11] To prevail on a business disparagement claim, a plaintiff must establish (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) resulting in special damages to the plaintiff." *Forbes*, 124 S.W.3d at 170.

charge from Paul Kates that Jump Out Express had bribed the local Better Business Bureau to satisfy this initial element of a claim for business disparagement. However, the Davis Parties cite no authority, and we are aware of none, allowing them to bring a claim for a disparaging remark about Jump Out Express. *See Lipsky,* 460 S.W.3d at 592 (recognizing business entities can prosecute actions to protect their reputations in their own names); *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 147 (Tex. 2014) (recognizing that a business owner may sue for injuries to its reputation). The Davis Parties did not refer the trial court to any evidence the Green Parties published false and disparaging information about Davis Nevada or Davis Texas. Accordingly, the Davis Parties' failed to meet their burden to raise a genuine issue of material fact as to that element. *See Cura-Cruz*, 522 S.W.3d at 575. Because the Davis Parties did not meet their burden, the trial court did not err in granting summary judgment on their claim for business disparagement.

*Violation of Automatic Stay*

The Davis Parties' asserted the Green parties violated the automatic stay of section 362 of the Bankruptcy because they failed to wait ten days after dismissal of the bankruptcy proceeding before proceeding to notice the foreclosure sale. *See* 11 U.S.C. § 362. The Green Parties' no-evidence motion for summary judgment asserted this claim contained "the element that the defendant must have taken some action against Plaintiffs' property. There is no evidence that any defendant took any prohibited action against Plaintiffs' property." In their response to the motion, the Davis Parties asserted the Green Parties' claim was false. In support, the Davis Parties referenced the following from Suarez's declaration:

> 19. At the time that Sky Lakes Foundation and the individual Defendants in this case who operated it noticed the 55 acre airport property for foreclosure sale, August 14, 2007, only four days had

19

passed since the Texas General Partnership's Bankruptcy had been dismissed. Sky Lakes Foundation and the individual Defendants did not wait ten days after the August 10, 2007 dismissal to post the Texas General Partnership's 55 acre airport property in question for foreclosure sale.

In their opening brief on appeal, the Davis Parties claim that Sky Lakes Foundation was required to wait ten days after the bankruptcy proceeding was dismissed to notice the foreclosure sale. As authority the Davis Parties cite section 362 of the Bankruptcy Code and *In re Derringer*, 375 B.R. 903 (B.A.P. 10th Cir. 2007). In their reply brief, the Davis Parties argue the Green Parties violated section 363 of the Bankruptcy Code and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. *See* 11 U.S.C.A. § 363; and Fed. R. Bankr. P. 4001(a)(3).

The Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised by its original brief. *See* Tex. R. App. P. 38.3. Moreover, as noted above, we may not affirm or reverse a summary judgment on a ground not presented to the trial court. *Stiles,* 867 S.W.2d at 26; *Travis*, 830 S.W.2d at 99–100; *Clear Creek Basin Auth*., 589 S.W.2d at 677. Accordingly, our consideration of this issue is limited to the Davis Parties' response to the no-evidence motion, as argued in their opening brief, contending the Green Parties violated the automatic stay by noticing the foreclosure sale before ten days had elapsed from the date the bankruptcy proceeding was dismissed.

Under section 362(c)(2) of the Bankruptcy Code, the automatic stay terminates upon the earlier of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. Suarez's declaration states the dismissal occurred on August 10, 2007, and the sale was noticed on August 14, 2007. There is no reference to any evidence that the effective date of the order of dismissal was delayed in this case, as happened in *Derringer,* 375 B.R. at 905–06.

Thus, the evidence reflects notice was given after the automatic stay terminated on August 10, 2017. Because the Davis Parties' failed to present more than a scintilla of evidence that the automatic stay was violated, they did not meet their burden to raise a genuine issue of material fact as to that element. *See Cura-Cruz*, 522 S.W.3d at 575. We therefore conclude the trial court properly granted summary judgment on the Davis Parties' claim for violation of the automatic stay.

*Economic Coercion and Duress*

In their no-evidence motion for summary judgment, the Green Parties asserted only that the claim "is not a cause of action. It is an affirmative defense. *See* TRCP 94." As recognized by this court in *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 169 (Tex. App.—Houston [14th Dist.] 2017, no pet.), the elements of economic duress or business coercion are:

> (1) the defendant threatened to do some act that it had no legal right to do; (2) the threat was of such a character as to destroy the plaintiff's free agency; (3) the threat overcame the plaintiff's free will and caused it to do what it otherwise would not have done and that it was not legally bound to do; (4) the restraint was imminent; and (5) the plaintiff had no means of protection. *See In re Frank Motor Co.*, 361 S.W.3d 628, 632 (Tex. 2012) (citing *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 837 (Tex. App.–Houston [1st Dist.] 1999, no pet.)).

The Green Parties motion did not state any of these elements or claim that the Davis Parties had no evidence as to any of them. A no-evidence motion for summary judgment "must state the elements as to which there is no evidence." Tex. R. Civ. P. 166a(i). Further, a no-evidence motion "must be specific in challenging the evidentiary support for an element of a claim" and "conclusory motions or general no-evidence challenges to an opponent's case" are insufficient. Tex. R. Civ. P. 166a(i) cmt. *See Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 907 (Tex. App.—

21

Houston [14th Dist.] 2016, no pet.). Because the Green Parties' motion did not assert there was no evidence of any of the elements of the Davis Parties' causes of action for economic duress or coercion, they were not entitled to summary judgment on those claims.

The Green Parties argue on appeal that even if economic duress or coercion are affirmative claims for relief, the trial court's summary judgment was proper because the claims are derivative of the wrongful acceleration claim. As noted above, we may not affirm or reverse a summary judgment on a ground not presented to the trial court. *Stiles,* 867 S.W.2d at 26; *Travis*, 830 S.W.2d at 99–100; *Clear Creek Basin Auth*., 589 S.W.2d at 677. Accordingly, the Davis Parties' first issue is sustained as to that claim.

### *Conspiracy*

Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, is a "derivative" tort, meaning a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). As a result, we do not analyze the trial court's judgment regarding the Davis Parties' cause of action for conspiracy separately from its judgment as to the other causes of action. *See id.* If the trial court did not abuse its discretion in granting summary judgment on all claims which are alleged to have arisen from the conspiracy, then, *a priori,* it did not abuse its discretion in granting summary judgment on the claim of conspiracy. *Id.*

As relevant to this case, the Davis Parties' counterclaim for conspiracy was based upon the underlying torts discussed above.[12] Because we have determined the trial court erred in granting summary judgment on the Davis Parties' claim for economic coercion and duress, we must also conclude the trial court abused its discretion in granting summary judgment on the Davis Parties' claim of conspiracy. We therefore sustain the Davis Parties' first issue as to that claim.

## CONCLUSION

The judgment of the trial court in favor of the Green Parties on the Davis Parties' causes of action for (1) violation of the TDCA; (2) economic duress or coercion; and (3) conspiracy are reversed and those claims are remanded for further proceedings. As to the remainder of the Davis Parties' claims, the judgment of the trial court is affirmed.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Hassan and Poissant.

---

[12] The other underlying torts remained in the original cause.