**Affirmed and Memorandum Opinion filed July 30, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00516-CV

## KEITH JANNISE, COWBOY'S MOBILE HOMES, INC., AND COWBOY'S MOBILE HOME MOVERS, INC., Appellants

## V.

## ENTERPRISE PRODUCTS OPERATING LLC, ENTERPRISE TX PRODUCTS PIPELINE COMPANY LLC, AND GROVES RGP PIPELINE LLC, Appellees

### On Appeal from the 344th District Court
### Chambers County, Texas
### Trial Court Cause No. CV27447

## M E M O R A N D U M   O P I N I O N

After appellees Enterprise Products Operating LLC, Enterprise TX Products Pipeline Company LLC, and Groves RGP Pipeline LLC (collectively, Enterprise) obtained a temporary restraining order against appellants Keith Jannise, Cowboy's Mobile Homes, Inc., and Cowboy's Mobile Home Movers, Inc. (collectively, Jannise), Jannise countersued Enterprise for damages and claimed the temporary

restraining order was wrongful. Enterprise moved for traditional and no-evidence summary judgment on all of Jannise's claims, which the trial court granted. Because we agree that Enterprise was entitled to a take-nothing judgment on Jannise's claims, we affirm the trial court's judgment.

## Background

Jannise owns slightly more than fifty acres of land in Wallisville, Chambers County, approximately forty miles east of Houston. He constructed a warehouse on the property, which he accesses by a concrete driveway. Enterprise owns several easements that encumber Jannise's land. Enterprise operates and maintains four underground pipelines through the easements.

Alleging that Jannise's driveway and other construction activities potentially posed a safety risk to the buried pipelines, Enterprise filed suit against Jannise in 2012. Enterprise alleged that Jannise: (1) constructed a driveway across the easements and pipelines, and that Jannise continually crossed the easements with dump trucks filled with dirt and dumped the dirt over the easements; (2) parked trailers, modular buildings, and heavy equipment on the easements; (3) removed the pipelines' markers; and (4) used heavy machinery to remove topsoil from the easements.

Enterprise also alleged that Jannise had not notified Enterprise of the construction prior to commencement and that Jannise, upon Enterprise's request to cease and desist activity over the easements due to potential safety issues, refused to do so. Enterprise attached to its original petition affidavits from Enterprise employees, who averred that Jannise had not made any "Texas One-Calls" regarding the underground pipelines or Jannise's surface activities. The so-called "one-call" statute generally requires that any person intending to "excavate" give notice to a central notification center before the date excavation is to begin. *See*

2

Tex. Util. Code § 251.151(a); *see also generally id.* §§ 251.001-.203 ("Underground Facility Damage Prevention and Safety Act"). In turn, the notification center is required to transmit the information received from the excavator to each member operator (such as a pipeline company) that may have underground facilities in the vicinity of the proposed excavation operation. *See id.* § 251.153(c). Enterprise sought an emergency temporary restraining order ("TRO"), a temporary injunction, and a permanent injunction "to stop [Jannise's] construction of activities on [Enterprise's] easements and rights of way, to cause the removal of encroaching structure, and to prevent [Jannise] from placing trailers and equipment over the easements and rights of way and from removing [Enterprise's] pipeline markers." Enterprise also asserted claims for declaratory relief, breach of contract, trespass, and a violation of Texas Health and Safety Code section 756.124.

The trial court signed an ex parte TRO against Jannise, which required Jannise to "immediately remove (or take such actions to cause the removal of) . . . the drive way and any appurtenances from the Easements" and to immediately cease and desist from:

(a) crossing the Easements with dump trucks filled with dirt; (b) dumping dirt over the Easements; (c) parking trailers, modular buildings, and heavy equipment across the Easements; (d) removing the Pipelines' markers; (e) using heavy machinery to remove topsoil from across the Easements; and (f) conducting construction activities across the Easements or otherwise constructing any structures or other obstructions over the Easements.

The order stated that it expired "no later than fourteen (14) days after the date same is signed, unless within such fourteen (14) day period the temporary restraining order is extended for a like period or [Jannise] consent[s] that it may be extended for a longer period."

A week after issuing the TRO, the trial court conducted a hearing on Enterprise's request for a temporary injunction. At the hearing, Jannise presented evidence controverting Enterprise's representation that Jannise had not made any statutorily required one-calls before constructing a driveway. Jannise produced evidence that he made several one-calls in 2011. At the end of the hearing, Enterprise's attorney stated that Enterprise did not "have any issue with [Jannise] using the driveway in the interim," but that Enterprise requested "some information on the design of the driveway." It is undisputed that Jannise never removed the driveway. The trial court did not sign a temporary injunction, and the TRO expired by its terms after fourteen days.

Nearly two years later, Jannise asserted a number of counterclaims against Enterprise. Jannise alleged that, prior to the TRO, he had "entered into a lucrative agreement with a third-party to lease [Jannise's warehouse] facility and to make heavy-hauls for the third-party renter of the facility." According to Jannise, when he notified the third-party renter, Kurt Degueyter, of the restraining order, Degueyter "canceled the agreement and took its business elsewhere," because the order "made access and therefore use of the property, as a practical matter, impossible."[1] Jannise asserted claims against Enterprise for negligence,[2] private nuisance, breach of contract, tortious interference with existing contract, tortious interference with prospective relations, and declaratory judgment. Jannise later amended his pleading to add claims for wrongful injunction and malicious prosecution. In his amended pleading, Jannise also asserted for the first time that Enterprise had obtained the TRO on a false and misleading factual premise,

---

[1] Jannise's pleading emphasized the TRO's effect on ingress and egress to the property. Jannise did not complain of the TRO's provisions temporarily restraining Jannise's ongoing construction activities.

[2] Jannise also characterized his negligence-based claim as "abuse of easement."

4

namely that Jannise had not notified Enterprise of the construction activities through the statutory one-call system.[3] Jannise sought to recover actual and special damages, attorney's fees, and punitive damages.

Enterprise filed a combined traditional and no-evidence motion for summary judgment as to all of Jannise's counterclaims. Enterprise argued that Jannise could produce no evidence to support various elements of his claims for declaratory judgment, breach of contract, tortious interference, and negligence.[4] Enterprise also argued that Jannise's wrongful injunction and malicious prosecution claims failed as a matter of law.

After considering Enterprise's motion and Jannise's response, the trial court granted Enterprise's motion for summary judgment and ordered that Jannise take nothing in his claims against Enterprise. The judgment does not state the specific grounds upon which the court relied in granting summary judgment.

Jannise appeals.

## Standard of Review

We review a grant of summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing the trial court's summary judgment, "we apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Dias v.*

---

[3] After Jannise amended his pleading, Enterprise amended its petition and supporting affidavits, removing any reference to Jannise's failure to make one-calls.

[4] Enterprise also argued that Jannise had no evidence to support his claim for private nuisance, but Jannise later abandoned that claim and it is not at issue in this appeal.

*Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206-08 (Tex. 2002). In our de novo review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Summary judgment is appropriate if the movant conclusively negates at least one essential element of the plaintiff's claim. *Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

### Analysis

In two related issues, Jannise contends on appeal that the trial court erred in granting summary judgment on his claims for declaratory judgment, breach of contract, tortious interference, negligence, wrongful injunction, and malicious prosecution. We address the trial court's summary judgment with regard to each of Jannise's claims in turn.

## 1. *Breach of contract*

Jannise asserted a claim for breach of contract. "To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In its motion for summary judgment, Enterprise argued that Jannise had no evidence that Enterprise breached the easements relevant to the property or that Jannise suffered any compensable injury as a result of any alleged breach. Jannise responded that:

> the easement documents show that [Enterprise has] a right to use the easements to run pipelines underground and buried in such a manner as not to interfere with [Jannise's] usage of the property. The easement was not a conveyance of the land itself and did not entitle [Enterprise] to interfere with [Jannise's] right of access. By [Enterprise's] submitting false affidavits under the circumstances to obtain a TRO requiring [Jannise] to remove the driveway and thereby prevent ingress and egress to the other portion of [Jannise's] property, there is at least a question of fact for the jury as to whether [Enterprise] breached the easement agreement.

The sole factual basis for Jannise's breach of contract claim is that Enterprise allegedly obtained a TRO based at least in part on the factually incorrect premise that Jannise failed to make the required one-calls before proceeding with the work. But accepting Jannise's contention that Enterprise submitted partially incorrect affidavits to secure a TRO, Jannise's response is insufficient nonetheless. Jannise fails to identify any easement provision that Enterprise allegedly breached by securing this TRO. Jannise instead relies on a common law principle that an

7

easement holder such as Enterprise breaches an easement by unreasonably interfering with the property owner's rights. *See Lamar Cty. Elec. Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App.—Texarkana 1989, no writ), *overruled on other grounds by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014). In *Lamar County Electric*, the court stated that an easement holder may not unreasonably interfere with the servient estate's property rights. *Id*. But when, as here, an easement is created by an express grant, the scope of the easement holder's rights must be determined by the terms of the grant, not the common law. *See DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999); *see also Phillips Nat. Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding that when a written easement agreement contains an express provision, the agreement, and not the common law, controls). Our case involves express easements and is substantively different from the prescriptive easement at issue in *Lamar County Electric*. Because Jannise has not identified any contractual provision Enterprise breached by obtaining the TRO based in part on factually incorrect affidavits, he has not created a genuine issue of material fact for trial on his breach of contract claim.

Accordingly, the trial court did not err in granting no-evidence summary judgment on this claim. *See, e.g., Osborne v. Coldwell Banker United Realtors*, No. 01-00-00463-CV, 2002 WL 1480894, at *8 (Tex. App.—Houston [1st Dist.] July 11, 2002, no pet.) (not designated for publication) (no-evidence summary judgment properly granted on appellants' breach of contract claim when appellants did not identify any term of agreement that was breached); *Garza v. Mut. of Omaha Ins. Co.*, No. 05-98-01093-CV, 2001 WL 873613, at *6 (Tex. App.—Dallas Aug. 3, 2001, no pet.) (op. on reh'g, not designated for publication) (same).

8

## 2. *Tortious interference*

Jannise alleged that Enterprise tortiously interfered with an existing contract with Degueyter or, alternatively, with a prospective business relationship with Degueyter.

Texas law protects both existing and prospective contracts from interference. *See Primrose Drilling Ventures Ltd. v. Nealwell Drilling Ltd.*, No. 14-98-00618-CV, 2000 WL 890622, at *3 (Tex. App.—Houston [14th Dist.] July 6, 2000, no pet.) (not designated for publication) (citing *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990), *superseded by statute on other grounds as stated in Prop. Tax Assocs., Inc. v. Staffeldt*, 800 S.W.2d 349, 350 (Tex. App.—El Paso 1990, writ denied)). The principal difference between the two causes of action involves the requirement of a contract as opposed to a potential for a contract. *Id.* The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of damages; and (4) actual damages or loss occurred. *Moore v. Bushman*, 559 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A party asserting a claim for tortious interference with a prospective business relationship must prove: (1) a reasonable probability that there would have been a contractual relationship; (2) an "independently tortious or unlawful" act by the interfering party that prevented the relationship from occurring; (3) the interfering party did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the claimant suffered actual harm or damage as a result of the interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Common to both torts is the element concerning intent. *Primrose Drilling*, 2000 WL 890622, at *3. "There must be some direct evidence of a willful act of interference." *Id.* To this end, a claimant must demonstrate that the interfering party knew of the existence of a contract or prospective contract between the plaintiff and a third party or had knowledge of facts that would lead a reasonable person to conclude that a contract or prospective contract existed. *Id.*

In its motion for summary judgment, Enterprise argued among other things that Jannise had no evidence that Enterprise knew about any alleged contract or potential contract and willfully and intentionally sought to interfere with any such contract or potential contract. Jannise responded that "it is obvious from the circumstances of the activities on [Jannise's] property that a reasonable person would be lead [sic] to believe there was a contract in which [Jannise] had an interest because the property owned by [Jannise] which was accessible only crossing over the easement is an active commercial enterprise." This assertion does not constitute specific, competent summary judgment evidence that Enterprise knew of a contract or prospective contract between Jannise and Degueyter, nor does it constitute evidence that Enterprise had actual knowledge "'of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Moore*, 559 S.W.3d at 652 (quoting *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 278 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)). In fact, Jannise does not point to any evidence at all regarding Enterprise's knowledge. At most, Jannise speculates that Enterprise should have suspected that a contractual or prospective business relationship existed between Jannise and a third party, because Enterprise's "own admissions . . . show that they were award of the extensive commercial activity that was going on the property." But there is nothing to suggest that the facts and circumstances,

10

as admitted by Enterprise, indicated that Jannise was contracting *with a third party*, as opposed to utilizing his property himself. Moreover, suspicion "does not rise to a level sufficient to create a fact issue" as to Enterprise's knowledge. *Primrose Drilling*, 2000 WL 890622, at *5. If Enterprise did not know of an existing or reasonably likely contract with a third party, then it could not have intended to interfere with those relationships. *Id.* at *3.

Because no evidence raises a fact issue regarding the "*intentional interference*" element of Jannise's causes of action for tortious interference with a contract or tortious interference with a prospective contract, the trial court correctly granted summary judgment in Enterprise's favor on these claims. *See id.* at *3, 5.

3. *Negligence*

Jannise asserted a negligence claim, which he alternatively referred to as "abuse of easement." Jannise alleged that Enterprise, as the easement holder, had a duty to use ordinary care regarding the use of the four easements and that Enterprise breached that duty by obtaining the TRO. To prevail on a common law negligence claim, a plaintiff must prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach. *Taylor v. Louis*, 349 S.W.3d 729, 734 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In its motion for summary judgment, Enterprise argued that there was no evidence that Enterprise breached any duty, separate and apart from any contractual obligations under the easements, no evidence that any such alleged breach proximately caused Jannise injury, and no evidence to support Jannise's claim for damages. Jannise responded that "the evidence shows that *by virtue of the easement agreements*, [Enterprise] had a duty to act reasonably regarding [Jannise's] property rights." (Emphasis added).

11

The acts of a party may breach duties in tort or contract or simultaneously in both. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991). If the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in tort. *DeWitt Cty. Elec. Coop.*, 1 S.W.3d at 105; *DeLanney*, 809 S.W.2d at 494. Conversely, if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *DeWitt Cty. Elec. Coop.*, 1 S.W.3d at 105.

To determine whether a claim sounds in tort or contract, we focus on the substance of the cause of action and not simply on the manner in which it was pleaded. *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.). "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam); *Clark*, 455 S.W.3d at 288. For a contracting party to be held liable under a tort theory, the liability must arise independently of the existence of a contract between the parties; the defendant must breach a duty imposed by law rather than by the contract. *See DeLanney*, 809 S.W.2d at 494.

In support of his negligence claim, Jannise has not identified a tort duty that Enterprise owed and that exists independently of the easements. Jannise conceded in the trial court that his complaint arose under the easement agreements, not the common law. Therefore, he cannot maintain a negligence claim in addition to his contract claim that is based on duties arising from the contractual relationship. *See DeWitt Cty. Elec. Coop.*, 1 S.W.3d at 105 (party could not maintain a negligence claim independently of contract claim when contract governed dispute). Jannise's

12

argument amounts essentially to a claim that Enterprise negligently breached the easements. But no such claim exists and any allegation that Enterprise failed to comply with the easement terms sounds only in contract. *See Mooney v. Sw. Bell Media, Inc.*, No. 05-90-00786-CV, 1991 WL 200214, at *5 (Tex. App.—Dallas Oct. 8, 1991, writ denied) (not designated for publication) (rejecting argument that party "negligently breached" contract) (citing *DeLanney*, 809 S.W.2d at 495).

The trial court did not err in granting summary judgment on Jannise's negligence claim.

4. *Wrongful injunction and malicious prosecution*

Jannise asserted claims for both wrongful injunction and malicious prosecution.

A party who wrongfully obtains injunctive restraint against another is liable for damages caused by the issuance of the injunction. *See Parks v. O'Connor*, 8 S.W. 104, 107 (Tex. 1888). An injunction is wrongful if its issuance was wrongful at its inception or if it was continued in effect due to some wrong on the part of the proponent. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 167 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *I.P. Farms v. Exxon Pipeline Co.*, 646 S.W.2d 544, 545 (Tex. App.—Houston [1st Dist.] 1982, no writ). A claim for wrongful injunction can be predicated upon the wrongful issuance of a TRO. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685-86 (Tex. 1990). Texas recognizes two separate causes of action for wrongful injunction, one upon the bond ordinarily filed to obtain the TRO or injunction, and the other for malicious prosecution. *Id.* at 685. The two actions differ in the kind of wrong that must be shown to establish liability and in the amount of recovery. *Id.*

13

A cause of action upon an injunction bond is predicated upon a breach of the condition of the bond. *Id.* As pertinent to the case at hand, the claimant must prove that the TRO was issued when it should not have been, and that it was later dissolved. *Id.* at 685-86. The claimant need not prove that the TRO was obtained maliciously or without probable cause. *Id.* at 686. The purpose of the bond is to protect the defendant from the harm he may sustain as a result of temporary relief granted upon the reduced showing required of the injunction plaintiff, pending full consideration of all issues. *Id.* The damages under this claim are limited by the amount of the bond. *Id.*

A cause of action for malicious prosecution, on the other hand, requires that the claimant prove the injunction suit was prosecuted maliciously and without probable cause, and was terminated in his favor. *Id.* In this instance, the injunction defendant recovers the full amount of his damages. *Id.*

Enterprise moved for traditional summary judgment on Jannise's wrongful injunction claim, arguing that, "[a]s pertinent to the case at hand, the claimant must prove that the TRO . . . *was later dissolved*." (Emphasis original). It is undisputed that the TRO expired by its own terms and was not dissolved by the court.[5] The expiration of an injunction is not a dissolution in one party's favor, for purposes of

---

[5] Jannise asserts in his appellant's brief that "the TRO was vacated at Enterprise's request" during the injunction hearing and that "the TRO [was] resolved at the [injunction] hearing where it was established that the one-calls had been made." The record does not support Jannise's characterization of events. At the conclusion of the hearing, Enterprise's counsel told the judge that Enterprise "probably won't have an issue with a driveway" if Enterprise received confirmation that Jannise's driveway conformed to Enterprise's guidelines. Enterprise's counsel also asked the judge to "look when you get time to see when we can revisit this, and in the interim, [Jannise's counsel] and I will be getting together to see if we can resolve this matter and not impose on the Court." At most, this indicates that the parties may have reached an agreement that Jannise need not remove the driveway, but there is no indication that the trial court, on its own or on the parties' agreement, acted to dissolve or vacate any part of the injunction. Moreover, Jannise later acknowledges in his appellate brief that "the TRO expired by its own terms 14 days after the TRO was signed."

obtaining damages for the wrongful issuance of the injunction. *See, e.g., In re Hong Kong Dajiang Innovation Tech. Co.*, No. 03-14-00053-CV, 2014 WL 641482, at *1 (Tex. App.—Austin Feb. 13, 2014, orig. proceeding) (mem. op.) (holding that issue of whether TRO should be dissolved was moot, upon party's concession that the order had expired by its own terms); *see also Nieto v. Alvarado*, No. 03-17-00387-CV, 2018 WL 1440459, at *1 (Tex. App.—Austin Mar. 23, 2018, no pet.) (mem. op.) (although interlocutory appellate jurisdiction lies when party appeals order that grants or overrules a motion to dissolve a temporary injunction, court of appeals held it lacked jurisdiction because the order being appealed "does not dissolve a temporary injunction but rather concludes that the injunction expired on a particular date in the past"); *Johnson v. Sunset Stores*, 27 S.W.2d 644, 647 (Tex. App.—El Paso 1930, writ dism'd) (because TRO had expired, trial judge's subsequent order dissolving the TRO "was of no effect, there being no restraining order in force for him to dissolve").

Enterprise also argued that Jannise's claim for malicious prosecution was "unfounded," because he could not prove that the injunction suit was prosecuted maliciously and without probable cause and that the TRO was terminated in Jannise's favor. *See DeSantis*, 793 S.W.2d at 686. Again, it is undisputed that the TRO expired by its own terms and was not terminated in Jannise's favor.

For these reasons, Enterprise was entitled to judgment as a matter of law on Jannise's wrongful injunction and malicious prosecution claims.

### 5. *Declaratory judgment*

Jannise asserted a claim for declaratory relief. The critical requirement to obtain a declaratory judgment is the existence of a justiciable controversy as to the rights and status of the parties that the declaration sought will resolve. *HMT Tank*

*Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 808 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In his live pleading, Jannise sought a declaration

> stating the rights, status, or legal relations of the parties so as to settle and to afford relief from uncertainty and insecurity with respect to the rights, statuses, and other legal relations with respect to the four easements [sic] agreements and [Enterprise's] claims with respect to whether (1) [Jannise] may cross and use the four easements in the manner that [he has] done in the past, (2) [Jannise] may remove the pipelines markers placed by [Enterprise] on or near the easements, or (3) [Enterprise's] so-called encroachment guidelines are binding on [Jannise]. [Jannise] seek[s] a declaration that [he] may cross and use the four easements in the manner that [he has] done in the past, that [he] may remove pipelines markers placed by [Enterprise] on or near the easements, and that [Enterprise's] so-called encroachment guidelines do not apply to [Jannise].

In its no-evidence motion for summary judgment, Enterprise characterized Jannise's claim incorrectly as a "request[] that the Court declare that Enterprise has precluded, impaired[,] or interfered with [Jannise's] rights in the subject property and rights to business opportunities and profits from the subject contract." Enterprise argued that Jannise had no evidence that a contract ever existed for which Enterprise may be blamed for precluding, impairing, or interfering with, and no evidence that Jannise suffered any damages or loss in relation to any complained-of action by Enterprise concerning the subject property, thus precluding Jannise's declaratory judgment claim.

Enterprise's motion sought summary judgment on grounds that were not the basis of Jannise's declaratory judgment claim, as pleaded. By dismissing Jannise's declaratory judgment claim in its entirety, the trial court erroneously granted more relief than requested. Ordinarily, when a trial court grants more relief than requested or grants summary judgment on issues that were not raised in the motion, we reverse and remand the case to the trial court. *See Brewer &*

16

*Pritchard*, 73 S.W.3d at 204; *see also Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 127 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (summary judgment cannot be properly granted on no-evidence motion when movant mischaracterizes or misinterprets essential element of nonmovant's cause of action). However, on appeal, Jannise does not contend that the trial court granted more relief than requested in Enterprise's motion for summary judgment. *See Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 514 n.3 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (recognizing that appellant must raise issue on appeal that more relief than requested in motion was improperly granted in summary judgment order). Instead, Jannise contends that he produced sufficient evidence to defeat Enterprise's motion—specifically, evidence of his contract with Degueyter and of Jannise's damages—even though this evidence is not relevant to Jannise's pleaded declaratory judgment claim. Because Jannise does not complain that the trial court granted summary judgment on matters not raised, we conclude that Jannise has not presented grounds warranting reversal of the trial court's ruling on his declaratory judgment claim as pleaded, and we affirm that portion of the trial court's judgment.

## Conclusion

Because we conclude that the trial court did not err in granting Enterprise's motion for summary judgment on all of Jannise's claims, we overrule Jannise's two issues on appeal and affirm the trial court's take-nothing judgment.

/s/    Kevin Jewell
            Justice

Panel consists of Justices Wise, Jewell, and Hassan.

17