**Affirmed in Part; Reversed and Remanded in Part; Majority and Dissenting Opinions filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00986-CV

---

## DAVID MOORE AND LISA MOORE, Appellants

## V.

## LISA BUSHMAN AND INTEGRITY LAND SERVICES & INVESTMENTS, LLC, Appellees

---

**On Appeal from the County Court
Waller County, Texas
Trial Court Cause No. C16-003**

---

## M A J O R I T Y   O P I N I O N

Appellants David Moore and Lisa Moore appeal from the trial court's grant of summary judgment in favor of appellees Lisa Bushman and Integrity Land Services & Investments, LLC (collectively, "Bushman"). The Moores sued Bushman alleging invasion of privacy, tortious interference with a contract, abuse of process, and civil conspiracy. Bushman filed a combined no-evidence and

traditional motion for summary judgment. The trial court granted the no-evidence motion. We affirm in part and reverse and remand in part.

## BACKGROUND

As a result of previous litigation between the parties, Bushman gained title to property adjacent to the Moores. Animosity continued between the parties, culminating in the present lawsuit. The Moores sued for invasion of privacy; interference with a business relationship; abuse of process; and civil conspiracy. The Moores claim that Bushman invaded their privacy by installing video cameras that point onto the Moores' property. The Moores also complain that Bushman tortiously interfered with their insurance contract by contacting the Moores' claims representative and urging him to deny the Moores' property damage claim. The Moores' abuse of process claim rests on an allegation that Bushman improperly had David arrested for removing a shed from the Moores' former property. Lastly, the Moores assert that Bushman conspired with a friend, William McCarty, in these tortious activities.

Bushman filed a no-evidence and, alternatively, traditional motion for summary judgment, contending that the Moores could not produce any evidence to support any of the elements of the causes of action they raised and that a settlement agreement that the Moores signed to conclude the prior litigation also released the claims brought in the present case. As stated, the trial court granted Bushman's no-evidence motion but did not rule on the traditional motion for summary judgment.[1]

---

[1] The trial court's order stated: "the Court is of the opinion that there is no evidence presented by [appellant] to support at least one element of each of the claims asserted. . . ." We conclude that the trial court ruled only on the no-evidence motion pursuant to Texas Rule of Civil Procedure 166a(i) and did not reach the alternative motion under Rule 166a(c).

## STANDARD OF REVIEW

We review de novo a trial court's grant of summary judgment. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing either a no-evidence or a traditional summary judgment motion, all evidence favorable to the nonmovant is taken as true, and we draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Cura-Cruz v. CenterPoint Energy Houston Elec., LLC*, 522 S.W.3d 565, 575 (Tex. App.— Houston [14th Dist.] 2017, pet. filed). In a no-evidence motion for summary judgment, the movant asserts there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Cura-Cruz*, 522 S.W.3d at 575. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element. *Id.*

## INVASION OF PRIVACY

The Moores' first issue challenges the grant of summary judgment against their invasion of privacy claim. Texas common law recognizes an individual's right to privacy. *See Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973). The Texas Constitution also guarantees the sanctity of the home and person from unreasonable intrusion. Tex. Const. art. 1, §§ 9, 25; *Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987). To establish an actionable invasion of privacy of the type the Moores allege — intrusion-upon-

seclusion — a plaintiff must show (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).[2] This type of invasion of privacy includes a physical invasion of a person's property as well as eavesdropping upon private conversations with the aid of wiretaps or microphones, or spying. *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, pet. denied); *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 618 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Video recordings may form the basis of a claim for invasion of privacy. *See Clayton v. Richards*, 47 S.W.3d 149, 155 (Tex. App.—Texarkana 2001, pet. denied).

One of the grounds asserted in Bushman's motion was that there was no evidence of the first element. In their response, the Moores asserted that Bushman instructed McCarty to install a video camera "pointed directly at the [Moores'] residence solely for the purpose to intrude into the personal lives of the Plaintiffs and to spy on their private affairs." The response further alleged "there was a video intrusion into a portion of the [Moores'] property that was not facing a public street and was a private and secluded area of the [Moores]." As summary judgment evidence, the Moores attached Lisa's affidavit, which states, in pertinent part:

> One of the ways [Bushman] used to harass my family was when she installed cameras pointing directly onto our property, specifically [] so she can spy on us. The section she pointed the camera did not face a public street and was our own private secluded area. There was no reason for her to point the camera in that direction other than to harass and annoy us. Knowing that she was recording our private moment greatly disturbed my husband and me.

---

[2] Texas recognizes several distinct types of invasion of privacy, but the Moores only allege this type in this case. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (listing three forms of accepted invasion of privacy claims and rejecting a fourth).

Other summary judgment evidence provided by the Moores shows that they had no access to their property by public road. Rather, their only means of access was via a dirt road across 10-12 acres owned by Bushman. Bushman placed cameras along the road leading to the Moores' front gate.

Bushman cited *Vaughn,* 202 S.W.3d at 308, in support of her motion. In *Vaughn*, the Tyler Court of Appeals held that evidence the defendant had watched the plaintiffs with binoculars through their front window from his own property and from across a public street did not support a finding of invasion of privacy. *Id.* at 320. The court explained that "[o]ne cannot expect to be entitled to seclusion when standing directly in front of a large window with the blinds open or while outside." *Id*.

The Moores relied upon *Baugh v. Fleming*, No. 03-08-00321-CV, 2009 WL 5149928 (Tex. App.—Austin 2009, no pet.), in their response, as they do on appeal. The Austin Court of Appeals affirmed a judgment for invasion of privacy where evidence indicated the plaintiffs saw defendants videotaping them over a six-foot privacy fence separating the parties' properties and through the windows of the plaintiffs' home. 2009 WL 5149928, at *1-2 & n.1. The court emphasized that the windows in question faced the fenced backyard and not a public street, distinguishing *Vaughn*. *Id*. at *2.

What these case have in common is the court's emphasis on the plaintiff's expectation of privacy. The *Vaughn* court held that it was not reasonable to expect privacy when standing in a front window facing a public street whereas the *Baugh* court held that it was reasonable to expect privacy when standing by a rear window facing a backyard with a high privacy fence. *Baugh*, 2009 WL 5149928 at *2; *Vaughn*, 202 S.W.3d at 320. As this court has noted, an intrusion into an area where the plaintiff had an expectation of privacy is sufficient to support a claim for invasion

5

of privacy. *Fawcett v. Grosu*, 498 S.W.3d 650, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Thus the question is whether the Moores produced more than a scintilla of probative evidence that Bushman's video camera intruded into area where they had an expectation of privacy.

Lisa's affidavit does not include facts that support her characterization of the property the camera was pointed at as being a "private secluded area." There are no facts in Lisa's affidavit as to whether the camera was pointed at a window or a particular part of their house, or whether it was pointed over a fence or indicating the size or type of fence. *See Vaughn,* 202 S.W.3d at 320; *Baugh*, 2009 WL 5149928, at *2; *see also Pascouet*, 61 S.W.3d at 619 (workers on tower could look over twelve-foot-high fence into the plaintiff's backyard). Rather, the only evidence presented is that the camera was pointed at the residence or onto the Moore's property at an area that is not on a public street. These facts are not evidence the camera was positioned to intrude into an area where it was reasonable to expect privacy. This evidence creates no more than a mere surmise of suspicion that the area in question is secluded or private. Given that Bushman owned the adjacent property, more evidence was needed to raise a fact issue regarding whether her camera recorded an area of the Moores' property not normally visible from Bushman's property. *See Vaughn*, 202 S.W.3d at 320 (holding no intrusion into private affairs where defendant used binoculars to watch plaintiffs from his own property). The Moores failed to present more than a scintilla of evidence of an intentional intrusion upon their solitude, seclusion, or private affairs or concerns.

Because the Moores did not meet their burden to present more than a scintilla of probative evidence to raise a genuine issue of material fact as to the first element, the trial court properly granted summary judgment on their invasion of privacy claim. We overrule the Moores' first issue.

## TORTIOUS INTERFERENCE

In their second issue, the Moores contest the grant of summary judgment on their tortious interference with a contract claim. The essential elements of a tortious interference with a contract claim are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). Tortious interference encompasses not only actual inducement of a breach of contract but also other invasions of contractual relations. *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied); *Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 573 (Tex. App.—Houston [14th Dist.] 1983), *aff'd in part, rev'd in part on other grounds*, 704 S.W.2d 742 (Tex. 1986). Accordingly, actionable interference includes any act which retards, makes more difficult, or prevents performance. *Seelbach*, 7 S.W.3d at 757; *Bellefonte Underwriters*, 663 S.W.2d at 573. Although the act of interference need only make performance more difficult to establish damage to the plaintiff, the defendant's intent must have been to effect a breach of the contract. *Fluor Enters., Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, pet. denied); *see also Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) (applying Texas law).

In support of their tortious interference claim, the Moores again relied on Lisa's affidavit but also provided an affidavit and attached documentation from their insurance adjuster, Ronald Lopez. Lisa's affidavit states, in pertinent part:

> Another way that the [sic] Ms. Bushman harassed my husband and I was when she went out of her way to contact our insurance company after our property was broken into, vandalized, and stolen from. Ms. Bushman knew that we had a contract with State Farm Lloyds, especially after she was informed as much by our agent. Yet she continued to call them several times telling them that we were crooks

7

and con artists and that they shouldn't pay on our claim. These were calls that my husband and I had answer for to our agent, explaining how we weren't what she claimed us to be. Because of these calls we had to hire legal counsel in order to get the claim we deserved.

Further, in their response to appellees' motion for summary judgment, appellants asserted that Lisa Bushman "attempted to have the insurer not pay on its contractual obligation to [appellants] with regards to the claim." Appellants' response relied upon Lopez's records as evidence that Lisa Bushman "contacted Mr. Lopez several times in order to paint [appellants] in a negative light so that State Farm would not pay the claim on the insurance. The contact with State Farm was unsolicited and initiated by the Defendant for the sole purpose stopping any form of payment of a claim to which [appellants were] entitled."

Lopez's affidavit states appellants filed a claim for theft and vandalism on January 5, 2013. Lopez avers that he was approached by Bushman's "acquaintance Bill McCarty" during his first visit to the insured premises and subsequently had "numerous conversations" with Bushman. Attached to Lopez's affidavit are file notes that he kept of his conversations with Bushman and McCarty. They reflect that he received nine phone calls in less than three months about the claim from Lisa Bushman and from McCarty.

According to these notes, McCarty and Bushman made a number of negative assertions against the Moores, including that they had damaged Bushman's property by attempting to "tear a clearing" through it, defaulted on court judgments and filed two fraudulent bankruptcies, hid property to avoid seizure, conducted fraudulent activity, were "crooks, cons," and had threatened to burn the property down if Bushman went forward with locking them out as she allegedly had the authority to do. The notes further reflect that Lopez was told that the Moores' daughter had been convicted of felony theft, the sheriff's department had at least two other ongoing

8

investigations concerning the Moores, there were photographs from the day the alleged property damage occurred, and a number of people wanted to talk to Lopez about the Moores' property damage claim.

Based on the above evidence, we conclude the Moores' presented more than a scintilla of probative evidence to raise a genuine issue of material fact on all four elements of their claim. According to Lisa's affidavit, Bushman "had actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 278 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). The statements made to Lopez by Bushman—including that State Farm should not pay the Moores' claim—reflect the occurrence of an act of interference that was willful and intentional. Lisa averred that Bushman's calls were the reason the Moores hired counsel to pursue their claims. Thus the interfering act caused the Moores to incur the expense of hiring a lawyer. Because the Moores met their burden to present more than a scintilla of probative evidence to raise a genuine issue of material fact on each element, the trial court erred in granting a no-evidence motion for summary judgment on their tortious interference claim. Issue two is sustained.

### ABUSE OF PROCESS

In their third issue, the Moores challenge the grant of summary judgment on their abuse of process cause of action. This claim was premised on David's arrest for criminal mischief. The indictment in question alleged that he intentionally or knowingly damaged or destroyed a dog kennel belonging to appellee Integrity Land Services and Investments. In response to the motion for summary judgment, the Moores supported the claim with Lisa's affidavit, the indictment, and the State's Motion to Dismiss the criminal charges in the "interest of justice." In her affidavit,

9

Lisa alleged that the arrest was for taking a shed off the Moores' former property when the property was still in their possession. She contends that Bushman got David arrested "just so [the Moores] would be more amenable to signing off on settlement" in the previous litigation between the parties. These allegations and evidence are not consistent with the cause of action asserted.

The cause of action pleaded, abuse of process, is the malicious use or misapplication of process in order to accomplish an ulterior purpose. *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff as a result of such illegal act. *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.— Houston [14th Dist.] 1994, writ denied). Implicit in the elements is the requirement that the process in question be improperly used *after* it was issued. *Hunt*, 68 S.W.3d at 130; *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n*, 957 S.W.2d 121, 133 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). In other words, the tort assumes that the original issuance of a legal process was justified, but the process itself is subsequently used for a purpose for which it was not intended. *Id.* at 130 (concluding that use of a false affidavit to support a writ of execution did not support a claim for abuse of process). When the process is used for the purpose for which it is intended, even though accomplished for an ulterior motive, no abuse of process has occurred. *Id.* "If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution." *Bossin*, 894 S.W.2d at 33; *see also Hunt*, 68 S.W.3d at 130 (quoting *Bossin*).

10

In this case, the Moores are claiming that the original purpose of the indictment was for an improper purpose, *i.e.*, to pressure the Moores into settling the previous litigation. The Moores are not contending that the indictment was originally proper but was converted to an improper use by Bushman. Moreover, the Moores presented no evidence that Bushman made an illegal, improper, or perverted use of a process after it was issued. Indeed, the case against David was dismissed "in the interest of justice." Accordingly, the trial court did not err in granting summary judgment against the abuse of process cause of action. *See Young v. Parent*, No. 01-16-00499-CV, 2017 WL 1173895, at *3 (Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.) (mem. op.) (affirming summary judgment on abuse of process claim where plaintiff asserted defendant made false statements to deputy and had ulterior motive in doing so); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) (affirming summary judgment on abuse of process claim where "there [was] no summary judgment evidence establishing that [defendants] improperly used the process after it was issued"); *Hunt*, 68 S.W.3d at 130 (affirming directed verdict on abuse of process claim where plaintiff asserted the original purpose of writ of execution was for an improper use); *RRR Farms*, 957 S.W.2d at 134 ("Filing a complaint is not an improper or illegal use of the process. Merely issuing or procuring process, even if accompanied by malicious intent or without probable cause is not actionable."); *Bossin*, 894 S.W.2d at 33 (affirming summary judgment on abuse of process claim where it was trial court's decision to issue writ of attachment and writ was used for its proper purpose). Issue three is overruled.

## CONSPIRACY

In issue four, the Moores contend the trial court erred in granting summary judgment on their civil conspiracy cause of action. Civil conspiracy is defined as a combination of two or more persons to accomplish an unlawful purpose or to

accomplish a lawful purpose by unlawful means. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). It is essentially a vehicle to impose joint and several liability against a member of a conspiracy for the harm caused by any member of the conspiracy. *See Energy Maint. Servs. Grp. I, LLC v. Sandt*, 401 S.W.3d 204, 220 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). As the parties recognize, conspiracy is a derivative tort, meaning that it does not "stand alone" but rather derives from independent, underlying tortious conduct. *See Tilton*, 925 S.W.2d at 681. In other words, a defendant's liability for conspiracy depends on participation in an underlying tort for which the plaintiff seeks to hold at least one member of the conspiracy liable. *Id*. The sole basis of Bushman's no-evidence motion for summary judgment on the Moores' civil conspiracy claim was that their other causes of action fail as a matter of law. Because we have determined otherwise, that basis cannot support the trial court's summary judgment on the civil conspiracy claim. We therefore sustain issue four.

## CONCLUSION

Having sustained issues two and four, we reverse and remand the trial court's no-evidence summary judgment on the Moores' claims for tortious interference and civil conspiracy. In all other regards, the trial court judgment is affirmed.


/s/     John Donovan
        Justice


Panel consists of Justices Jamison, Busby and Donovan. (Jamison, J., dissenting).

12