**Motion for Rehearing Granted; Original and Amended Motions for En Banc Reconsideration Denied as Moot; Memorandum Opinion issued on August 29, 2023 withdrawn; Judgment issued on August 29, 2023 vacated; and Affirmed and Majority Opinion filed June 27, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00294-CV

---

### SHANMUGAM BALUR SANKARAN, Appellant

### V.

### VFS SERVICES (USA) INC., Appellee

---

### On Appeal from the 269th District Court
### Harris County, Texas
### Trial Court Cause No. 2021-40692

---

## MAJORITY OPINION

We issued our opinion in this case on August 29, 2023. Appellant Shanmugam Balur Sankaran filed a motion for rehearing and a motion for en banc reconsideration. Our disposition remains the same, but we grant the motion for rehearing, dismiss the original and amended for en banc reconsideration as moot, withdraw our previous opinion, vacate our previous judgment, deny the requested

rehearing relief, and issue this opinion and judgment.

## I.  THE PROBLEM OF APPELLATE LIMBO/THE PHANTOM ZONE

In the past this court has at times granted a motion for rehearing, issued an opinion on rehearing to clarify the rationale for our judgment, denied the requested rehearing relief, and left the judgment unchanged. What was not apparent is that this practice can stop the running of our plenary power over the appellate judgment, placing the judgment in what can be called appellate limbo or "The Phantom Zone." Not surprisingly, we have found no caselaw directly addressing this unintended consequence in the operation the Texas Rules of Appellate Procedure.[1]

Under Texas Rule of Appellate Procedure 19.1:

> A court of appeals' plenary power over its judgment expires:
>
> (a) 60 days after judgment if no timely filed motion for rehearing or en banc reconsideration, or timely filed motion to extend time to file such a motion, is then pending; or
>
> (b) 30 days after the court overrules all timely filed motions for rehearing or en banc reconsideration, and all timely filed motions to extend time to file such a motion.

Tex. R. App. P. 19.1. After a court decides a motion for rehearing or a motion for en banc reconsideration, a further motion for rehearing or motion for en banc reconsideration may be filed within 15 days of the court's action if the court (1) modifies its judgment, (2) vacates its judgment and renders a new judgment, or (3) issues a different opinion. *See* Tex. R. App. P. 49.4, 49.6.

---

[1] Neither of the parties have raised this issue of never-expiring plenary power because it is a problem we have not yet created in this rehearing. We write on the issue to explain how we avoid the problem and to bring this issue to the attention of other appellate judges and appellate practitioners.

Under these rules, the time for the expiration of our plenary power over the appellate judgment never starts if we: (1) grant a motion for rehearing or en banc reconsideration and (2) deny the requested relief, as might happen when the court issues an opinion on rehearing or reconsideration explaining the denial of the requested relief.[2] To avoid this happening, our court's practice in such situations going forward should be to vacate the prior judgment, issue an opinion (either a substitute opinion or an opinion on rehearing), and render a new judgment.[3]

## II.  OVERVIEW

Sankaran brought suit against VFS Services (USA) Inc., ("VFS") for breach of contract, negligence, unjust enrichment, and alleged Penal Code violations related to VFS's handling of Sankaran's travel documents.[4] The trial court

---

[2] This is one example of how an appellate judgment might fall into appellate limbo or "The Phantom Zone"; there may be others.

[3] One problem in the Texas Rules of Appellate Procedure is that the decision to grant or overrule the motion to rehear or reconsider the judgment and opinion is conflated with the decision to grant or deny the requested relief, i.e., the appellate court can *grant* rehearing/reconsideration and still *overrule* the requested relief. Rule 19.1(b). Another problem is that the term "overruled"—as opposed to the term "denied"—is used in the Texas Rules of Appellate Procedure only (with one exception) for actions of the courts of appeals related to motions for rehearing or en banc reconsideration. *Compare* Tex. R. App. P. 19.1(b), 49.11, 53.7(c), 68.2(a), 68.4(f)(3) *with* 42.4(b) (appellate court may overrule motion for involuntary dismissal of criminal appeal in specific circumstance relating to appellant's escape from custody). Generally, the term "overruled" is a trial-court ruling, and as a practical matter appellate courts may mistakenly use "denied" when the precise ruling is "overruled." Perhaps courts of appeals should draw a distinction between *overruling* the motion for rehearing/reconsideration and *denying* the requested relief if a motion for rehearing /reconsideration is initially granted. Further consideration of the wording of rules 19.1, 49.4, 49.6 is warranted by the supreme court, court of criminal appeals, and their rules advisory committees. The accidental lack of an end to the plenary power of the court of appeals over its judgment is a serious finality problem.

If there is a reason why one or more parties would not want a prior appellate judgment to be vacated and reissued if the court denies the requested relief, e.g., an unintended effect on the trial court's postjudgment interest, then a careful and prudent appellate practitioner should inform the court of that reason.

[4] Sankaran is a pro se litigant, both on appeal and in the trial court.

rendered a final take-nothing summary judgment, dismissing all Sankaran's claims.

In five issues, Sankaran argues the trial court erred by: rendering summary judgment in favor of VFS (issues 1 and 2); granting VFS's objections to Sankaran's discovery requests (issue 3); and granting VFS's motion to compel Sankaran to answer VFS's discovery requests (issue 4).[5] We affirm.

### III. BACKGROUND

VFS manages the administrative tasks related to visa, passport, and consular services for the Office of Consulate General of India ("the Embassy") for people residing in the United States. Sankaran sought to cancel his Indian passport and obtain a renunciation certificate. In November 2020, Sankaran used VFS's website to process his renunciation certificate and paid VFS $231.74. As part of the process, VFS required Sankaran to send in several personal documents, including his original Indian passport, U.S. passport, driver's license, and an income-tax return.

In July 2021, Sankaran filed suit against VFS asserting breach-of-contract and negligence causes of action related to VFS's delay in processing his renunciation certificate and returning his personal documents. On the breach-of-contract claim, he asserted that he was entitled to compensatory damages and "damages for emotional distress." Specifically, Sankaran alleged that he was unable to travel to India due to VFS's delay in processing his documents, which caused him mental anguish because he was unable to attend his father's funeral in

---

[5] Sankaran also presents a fifth issue in his brief, arguing generally that it is not legal to withhold personal documents without consent. Because Sankaran does not assert any error on the part of the trial court, there is nothing for this court to review with respect to issue 5. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (issues on appeal do not meet requirements of Texas Rules of Appellate Procedure if they do not point out any error allegedly committed by trial court); *see also* Tex. R. App. P. 38.1(f), (i). Accordingly, we dismiss issue 5.

India in December 2020. On his negligence claim, Sankaran likewise sought to recover for his severe mental anguish, in addition to property damages, and punitive and exemplary damages due to VFS's alleged "gross negligence and/or malice."

In September 2021, VFS filed a traditional motion for summary judgment, alleging that Sankaran admitted to receiving his renunciation certificate and that Sankaran did not demonstrate that he suffered any recoverable damages. Sankaran filed a response to VFS's motion for summary judgment, admitting that he had received his renunciation certificate from VFS on July 7, the day he filed his original petition.[6] The trial court denied the original motion for summary judgment.

In October 2021, Sankaran filed a motion to compel VFS to respond to discovery requests, which the trial court denied; the trial court also granted VFS's motions to limit Sankaran's discovery and compel Sankaran to respond to discovery. Sankaran filed a motion to reconsider the denial of his motion to compel VFS's discovery. The trial court granted the motion in part and denied it in part, ordering VFS to provide responsive information and overruling VFS's objections to a select few interrogatories, but otherwise sustaining VFS's objections to the rest of the interrogatories and to Sankaran's requests for production.

In November 2021, VFS filed an amended motion for summary judgment,

---

[6] In his motion for rehearing, Sankaran contests this factual assertion, arguing he never received his renunciation certificate. According to Sankaran, he was not admitting that he received the certificate on July 7; instead, he was alleging that as of July 7, he still had not received it. Assuming without deciding that Sankaran did not receive his renunciation certificate as he contends in his motion for rehearing, the alleged factual inaccuracy does not change our analysis or otherwise affect the final disposition. To the extent Sankaran raises other issues in his motion for rehearing, we find them to be without merit.

arguing that Sankaran's recently filed discovery responses conceded that Sankaran sustained no recoverable damages. Additionally, VFS contended that the economic-loss rule barred any recovery on his negligence claims. VFS also pointed out that in Sankaran's response to the original motion for summary judgment, he admitted that his renunciation certificate was returned to him.

In response, Sankaran filed an amended petition, adding claims for unjust enrichment and violations of various Penal Code provisions. VFS filed a supplement to its amended motion for summary judgment to address Sankaran's allegations of unjust enrichment and Penal Code violations. VFS asserted that there were no private causes of action Sankaran could pursue for VFS's alleged criminal offenses. Regarding the unjust enrichment claim, VFS argued that "Mr. Sankaran's newly added claim for unjust enrichment is defeated by the fact that he concedes he received his renunciation certificate." Sankaran did not respond to the supplement or specifically refute VFS's allegation that he had conceded receiving his renunciation certificate.

In December 2021, the trial court ruled on and signed an order, which stated, "all of Plaintiff's claims and causes of action against Defendant are dismissed, with prejudice, [e]xcept Plaintiff's claim for breach of contract. Also, Plaintiff's claims of non-economic damages and property damage are Dismissed."

In February 2022, VFS filed a second amended motion for summary judgment, arguing that Sankaran's breach-of-contract claim should also be dismissed because Sankaran did not produce any evidence of recoverable damages. Furthermore, VFS alleged that after the trial court granted the first amended motion for summary judgment, VFS tendered the fees it received from Sankaran as an accord and satisfaction. Even though VFS refused to concede that Sankaran was entitled to any refund, it sent a cashier's check for $56.74 to

Sankaran and filed a notice of accord and satisfaction and tender of plaintiff's sole remaining damages. *See* Uniform Commercial Code, Tex. Bus. & Com. Code Ann. § 3.311. According to VFS, the check covered the nominal fees that VFS received that might be construed as ostensible damages Sankaran suffered. In its motion, VFS additionally alleged that as of February 2022, "VFS has not received a refund of the fees that it tendered to Mr. Sankaran on December 30, 2021." Because Sankaran had no recoverable damages, VFS alleged that the suit was brought in bad faith. The trial court signed a "final order" in March 2022, granting VFS's second amended motion for summary judgment and dismissing all Sankaran's claims against VFS with prejudice. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (stating that an order or judgment is final for purposes of appeal if it "finally disposes of all claims and parties").

Sankaran filed a timely notice of appeal challenging the final judgment.

## IV. ANALYSIS

### A. Summary judgment

In issues 1 and 2, Sankaran argues that the trial court erred in rendering summary judgment in favor of VFS. Specifically, he alleges the trial court erred by granting VFS's first amended motion for summary judgment dismissing his negligent unjust enrichment, and Penal Code violation claims, and by granting the second amended motion for summary judgment dismissing his breach-of-contract claim.

#### 1. Standard of review & applicable law

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d

211, 215–16 (Tex. 2003). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes its right to summary judgment, then the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.* We review the granting of summary judgment de novo. *Knott,* 128 S.W.3d at 215.

## 2. Application

### a. Negligence and gross negligence claims

In its first amended motion for summary judgment, VFS argued there is no genuine issue of material fact regarding Sankaran's recoverable damages for his negligence claim. We agree with VFS.

Sankaran acknowledged that he was not seeking recovery for lost wages, lost earning capacity, or medical expenses; thus, Sankaran did not seek economic damages. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003) ("Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses."). Sankaran sought to recover "property damages," but provided no evidence of his property being damaged.

VFS additionally argues there is no evidence of malice on the part of VFS because nothing in the record reflects that VFS specifically intended "to cause substantial injury or harm" to Sankaran. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) (defining malice to mean "a specific intent by the defendant to cause substantial injury or harm to the claimant"). Likewise, VFS asserts there is no evidence that VFS's actions constituted gross negligence because VFS's alleged

conduct did not involve any extreme degrees of risk. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (defining gross negligence to mean "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.").

Because there is no evidence demonstrating that VFS specifically intended to cause substantial harm to Sankaran, we agree with VFS that Sankaran failed to raise genuine issues of fact on his gross negligence claims for exemplary and punitive damages. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (defining exemplary damages to mean "any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages are neither economic nor noneconomic damages. 'Exemplary damages' includes punitive damages.").

The only other damage Sankaran pleaded with his negligence claim was mental anguish. However, Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish on another. *See City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997) ("For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish."). In addition, while mental-anguish damages are recoverable in virtually all personal-injury cases, a claimant's right to recover such damages is limited if the plaintiff did not suffer a physical injury resulting from the defendant's breach. *Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 564 (Tex. App.—Houston [14th Dist.] 2014, pet. granted, judgm't vacated w.r.m.).

Without a physical injury, a plaintiff may recover mental-anguish damages

only if the case falls into one of three categories. *Likes*, 962 S.W.2d at 495. The first category is for claims in which the defendant engaged in intentional or malicious conduct, such as assault and battery, or defamation. *Id.* The second type of claim occurs when mental-anguish damages are the foreseeable result of a duty arising out of a special relationship, such as physician-patient. *Id.* at 496. The third is for particularly shocking and disturbing events in which mental anguish is a highly foreseeable result. *Id.* These claims include wrongful-death suits and actions for bystander recovery when a plaintiff was in close proximity to a close family member's serious injury. *Id.* Sankaran's negligence claim fits into none of these categories. And even if it did, Sankaran's claim that he "suffered severe mental anguish and stress" does no more than create a mere surmise or suspicion that he experienced mental anguish. *See Moore v. Bushman*, 559 S.W.3d 645, 650 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (evidence that only raises a mere suspicion is insufficient to raise a fact issue).

Because Sankaran did not raise a genuine issue of material fact on damages recoverable pursuant to his negligence claims against VFS, we conclude that the trial court did not err when it rendered summary judgment on that claim. *Id.*

### b. Unjust-enrichment claim

In its first amended motion for summary judgment, VFS argued that Sankaran's unjust-enrichment claim should be dismissed because he had already received his renunciation certificate. We agree with VFS.

To prevail on an action for unjust enrichment, a plaintiff must prove: "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Southwestern Bell Telephone Co. v. Marketing on Hold*, 308 S.W.3d 909, 921 (Tex. 2010) (quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *see* Comm. on Pattern Jury Charges, State Bar of

Tex., *Texas Pattern Jury Charges: Business • Consumer • Insurance • Employment* PJC 101.44 (2022). Unjust enrichment is not, however, a proper remedy merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to the claimant. *Pope v. Garrett,* 211 S.W.2d 559, 560–62 (Tex. 1948).

The record contains no evidence of fraud, duress, undue advantage taken by VFS. *See Southwestern Bell*, 308 S.W.3d at 921. While it is unfortunate that Sankaran missed his father's funeral, that alone does not justify recovery under a theory of unjust enrichment. *See Pope,* 211 S.W.2d at 560–62.

Because Sankaran did not raise a genuine issue of material fact regarding his unjust enrichment claim, we conclude that the trial court did not err in rendering summary judgment on this claim. *See* Tex. R. Civ. P. 166a(c).

### c.    Penal Code claims

In his amended petition, Sankaran alleged that VFS tampered with a governmental record and tampered with or fabricated physical evidence. *See* Tex. Penal Code Ann. §§ 37.09–.10. In its first amended motion for summary judgment, VFS asserted that Sankaran could not pursue alleged criminal violations against VFS in a civil lawsuit. We agree with VFS. Texas does not recognize private causes of action for Penal Code violations. *See Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (no private cause action for penal statute unless Legislature has clearly granted standing to bring such actions). Sankaran has not demonstrated his entitlement to bring a private cause of action for his Penal Code claims; accordingly, the trial court did not err in rendering summary judgment on his Penal Code claims. *See* Tex. R. Civ. P. 166a(c).

### d. Breach-of-contract claim

To prevail on a breach-of-contract claim, a plaintiff must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

By using its website and by availing himself of the services on VFS's website, Sankaran agreed to the explicit terms and conditions for use of the website, which state that VFS "cannot be liable for any delay in processing, granting or rejecting the renunciation as this is the sole prerogative of the Embassy of India." The website additionally states that VFS shall have no liability to any person relying on a renunciation application for "any loss of profit, revenue, contract, business, profession, or other occupation; for any direct, indirect, punitive, incidental, special, consequential damages or any damages whatsoever." Sankaran did not plead that VFS breached any specific provisions of the terms and conditions as listed on the website.

Additionally, we note that Sankaran also alleges the existence of a contract-in-fact.[7] Sankaran asserts that VFS breached the alleged contract-in-fact by failing to return the renunciation certificate and Indian passport. However, Sankaran did not establish that he suffered recoverable damages as a result of VFS's alleged breach. Sankaran insisted he suffered emotional distress, but he is not entitled to

---

[7] In his amended petition, Sankaran pleaded that VFS breached a contract-in-fact by: (1) failing to return the renunciation certificate and his Indian passport; (2) failing to update the status of his application; (3) "failing to investigate the issue"; (4) "failing to share 'the Truth'"; and (5) "failing to disclose Defendant higher authority [sic] for escalation." We do not address arguments 2, 3, 4, or 5 because Sankaran does not raise them on appeal.

recover for emotional distress on his breach of contract claim. *See Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 484 (Tex. App.—Houston [14th Dist.] 1996, no writ) (observing that, generally, mental anguish damages are not recoverable in a breach of contract claim). Sankaran also claimed he would be unable to travel in the future without his visa, but he does not elaborate on what travel plans he had or how his inability to travel would specifically cause him any monetary harm.

We conclude that Sankaran has not demonstrated that VFS breached the terms of the contract. *See Pathfinder*, 574 S.W.3d at 890. Accordingly, the trial court did not err in rendering summary judgment on Sankaran's breach-of-contract claim. *See* Tex. R. Civ. P. 166a(c).

We overrule issues 1 and 2.

## B. Discovery

In issues 3 and 4, Sankaran argues the trial court erred by: (1) granting VFS's objections to Sankaran's discovery requests and (2) granting VFS's motion to compel Sankaran to answer VFS's discovery requests.

### 1. Standard of review

We review a trial court's discovery rulings for an abuse of discretion. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). Generally, "[a] trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* More specifically, "[a] trial court abuses its discretion when it denies discovery going to the heart of a party's case or when that denial severely compromises a party's ability to present a viable defense." *Id.* at 663. "[A] party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action" and appears to be reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a). Discovery requests must reflect a

13

"reasonable expectation of obtaining information" that would aid in resolving the dispute and "must be 'reasonably tailored' to include only relevant matters." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam) (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding)).

If the trial court abuses its discretion in making a discovery ruling, the complaining party must still show harm on appeal to obtain a reversal. Tex. R. App. P. 44.1(a). Harmful error is error that "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." *Id.*

### 2. Sankaran's discovery requests

In the present case, Sankaran requested the following discovery:

### A. INTERROGATORIES

1. Provide gross annual revenue, net taxable income, and detail the number of consumers Appellee has served over the past three years.

2. Provide detailed information about all of Appellee's US operations.

3. Provide detailed information about all litigation Appellee has been a party to.

### B. REQUESTS FOR PRODUCTION

1. Produce Appellee's contract with the Consulate General of India.

2. Produce Appellee's tax returns from 2016 through present.

3. Produce all of Appellee's communications with the Consulate General of India.

### C. REQUESTS FOR ADMISSION

1. Admit you don't have documents to defend your general denial.

2. Admit you were negligent in handling Appellant's complaints about stress.

3. Admit you provided intentional infliction of emotional distress on

Appellant.

None of these discovery requests go to the "heart" of Sankaran's case. *Ford*, 279 S.W.3d at 663. We already concluded above that Sankaran failed to demonstrate that VFS breached the terms of the contract. The trial court could have reasonably concluded that further discovery would not help Sankaran establish the base elements of his claims. Stated differently, producing VFS's tax returns or VFS's contract with the Embassy of India would not help Sankaran establish the damages he suffered or that VFS breached its contract with Sankaran. The answers to the requested admissions would not provide any helpful information; VFS ultimately provided many documents in support of its denial. Whether VFS was negligent is irrelevant if Sankaran cannot prove any damages, and there is no evidence to suggest VFS intended to cause emotional distress to Sankaran. Therefore, we conclude that the trial court did not abuse its discretion in partially granting VFS's objections to Sankaran's discovery requests. *See id.*

We overrule issue 3.

### 3.      VFS's Motion to Compel

VFS repeatedly requested that Sankaran provide written discovery responses. After Sankaran refused to do so, VFS filed a motion to compel. VFS sought information regarding Sankaran's claims and potential damages, such as information related to medical treatment and lost wages. There is nothing in the record to indicate that VFS's discovery requests were improper or made with the intent to harass Sankaran. VFS simply sought information related to Sankaran's potential claims for damages. Thus, we cannot conclude that the trial court abused its discretion. *See id.*

We overrule issue 4.

## V.     CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/     Charles A. Spain
Justice


Panel consists of Justices Zimmerer, Spain, and Hassan. (Zimmerer, J., does not join section I, but joins in the resolution of the appeal).